862 P.2d 192

**STATE of Arizona, Appellee,**

v.

**Thomas Paul WEST, Appellant.**

No. CR–88–0286–AP.

Supreme Court of Arizona,
En Banc.

Sept. 30, 1993.

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Cr. Appeals Section, and Randall M. Howe, Asst. Atty. Gen., Phoenix, for appellee.

Susan A. Kettlewell, Pima County Public Defender by Rebecca A. McLean and Nancy F. Jones, Deputy Pima County Public Defenders, Tucson, for appellant.

## OPINION

MOELLER, Vice Chief Justice.

### STATEMENT OF THE CASE

Thomas Paul West (defendant) was convicted by a jury of first degree felony murder, second degree burglary, and theft. He was sentenced to death for murder and to concurrent 10 year terms for burglary and theft, to be served "consecutively" to the death sentence. This is an automatic appeal pursuant to A.R.S. § 13–4031 and Ariz.R.Crim.P. 26.15 and 31.2(b). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. §§ 13–4031, 13–4033.

### FACTS

Defendant came to Phoenix from Illinois in June of 1987. He first stayed with his friends Scott and Lisa at their Glendale apartment and later went to Tucson to stay with Polly, another friend. Polly worked at a Circle K in Tucson and was acquainted with the victim, who was a regular customer. The victim told Polly's boss that he had several items for sale. Polly was interested in purchasing a VCR and, on June 26, 1987, using a map that the victim had given her boss, she and defendant went to the victim's home.

The victim had a large amount of electronic equipment for sale. Polly and defendant spent more than an hour at victim's home viewing the items for sale and talking with the victim. Polly bought a VCR, a video camera, and a typewriter.

Two-and-a-half weeks later, defendant showed up at Scott and Lisa's Glendale apartment. Lisa told defendant to come back later because Scott was sleeping. Defendant left and went to another apartment in the same complex to see Richard, another friend. Several hours later the two left for Tucson. Defendant did not own a car, but he was driving a station wagon that he told Richard he had borrowed from friends in Tucson.

Richard accompanied defendant to Tucson where defendant stopped to make a phone call, after which, according to Richard, defendant was "really upset." Defendant drove a few more blocks before making another phone call. After this call, he calmed down. Defendant and Richard then drove to a secluded desert area and met Polly. Defendant spoke to Polly for several minutes, telling her that "he was in trouble and he was going to be out of town for a while." Defendant then got back in the car and drove approximately 300 to 400 yards into the desert.

Hidden beneath a tree was a cache of electronic equipment, including VCRs, videocassettes, and stereo equipment. Richard helped defendant load many of these items into the station wagon, but they left behind several items that would not fit. Defendant and Richard then returned to Phoenix and stored the equipment in Scott and Lisa's apartment.

On the return trip to Phoenix, defendant told Richard that he had beaten "some guy" up and had been covered with blood. In Phoenix, defendant told Scott that he had "ripped some old man off." Later, defendant told Scott that he wanted to "dump the car" because "it was the old man's that he had robbed." Scott and defendant drove separately out to the far west side of Phoenix, where defendant told him that "he was going to go out in the field and either just dump it or burn it." Defendant asked Scott if he had a gas can. Scott did not. Defendant drove off in the station wagon and returned a short time later on foot. Scott saw a big cloud of smoke, and defendant told him that he had burned the car.

On Tuesday afternoon, July 14, Polly called Scott and Lisa's apartment looking for defendant. Lisa went to Richard's apartment to tell defendant about the call.

She there heard defendant tell Richard and another person that he was "trying to get rid of some merchandise." Lisa asked defendant if he was in trouble, and he told her "not to worry about it." Later defendant told Scott that "he had beat this old man up and tied his arms and legs behind his back and threw him in the closet and then he ripped his stuff off and the car." Defendant had scratches on his hands and told Scott that "he got them beating up the old man."

The next day, while he was in her apartment, Lisa heard defendant say that he "had beat the fuck out of this old man and [had] thrown him in a closet." Lisa asked defendant, "[Y]ou did what?" to which defendant replied, "[T]his isn't for your ears, don't worry about it."

Later, Lisa's friend Patty called, and Lisa told her what she had heard about defendant's activities. About 45 minutes later, Lisa went to Richard's apartment and confronted defendant. She told him that she had a "pretty good idea of what had happened" and that, if the victim could be helped, he should be. Lisa told defendant that "he should call Silent Witness or somebody that would go check to see if this man was alive and that he probably had family that loved him." Defendant replied, "[N]o, this man had nobody," and that Lisa "would have to live with it."

On Thursday, July 16, defendant asked Scott to make plane reservations for his return to Illinois. Defendant packed the equipment that had not been disposed of into boxes and, on Thursday night, left Phoenix with the items. In the meantime, Patty had contacted the Pima County Sheriff's Department. Detective Petropoulos spoke to Patty several times during the morning of Friday, July 17 and, using the information that she provided, contacted Polly. While interviewing Polly, the detective noticed the map to the victim's house. After obtaining the map from Polly, the detective called the number written on the map. Receiving no response, he went to the victim's home to investigate.

Detective Petropoulos entered the trailer and found the victim's decomposing body in the north bedroom. The victim's hands and feet were tied behind his back with a vacuum cleaner cord and a lamp wire. The medical examiner later testified that the victim had been beaten severely about the face with a blunt instrument and that he probably had bled to death within 45 minutes to an hour. Although a knife was found in the trailer, the medical examiner found no evidence that the victim had been stabbed. Because of the body's decomposed condition, the medical examiner could only estimate the time of death. In his opinion, the victim had been dead between three and seven days, placing the killing between Saturday, July 11 and Wednesday, July 15.

Some time after 3:00 a.m. on Saturday, July 18, Sergeant Mark Wilkans of the Hodgkins, Illinois, police department stopped a vehicle for speeding. Defendant was one of two passengers in the car. After arresting the driver for driving under the influence, Wilkans asked defendant for identification. Having none, defendant gave Wilkans his name and birth date. Wilkans radioed this information to his base and was informed that defendant was wanted in Arizona for murder. Wilkans arrested defendant. A search of the car at the Hodgkins police station yielded boxes that defendant had brought from Arizona. The boxes were inventoried and contained electronic equipment later identified as having been taken from the victim. On Monday, July 20, Detective Petropoulos arrived in Illinois from Tucson and took custody of defendant and the stolen property. He sealed the boxes and mailed them to Tucson where, after obtaining a warrant, he searched them.

## ISSUES

Defendant raises 10 trial issues, 11 sentencing issues, and one issue relating to appellate procedure. Many of the issues have numerous subparts.[1] The issue relating to appellate procedure is:

1. Defendant lists as two other issues "indepen-

dent review" and "proportionality reviews." We

1. Whether our order limiting defendant's opening brief to 150 pages violated his due process right to effective assistance of counsel.

The trial issues are:

1. Whether the trial court erred by "death qualifying" the jury;
2. Whether the trial court improperly admitted evidence seized in Illinois as a result of a warrantless automobile inventory search;
3. Whether the trial court erred by precluding defendant from raising as a defense that the victim had suicidal tendencies and had arranged his own death;
4. Whether the trial court erred by admitting a gruesome photograph of the victim;
5. Whether defendant was deprived of his right to be informed of the nature of the charges against him;
6. Whether the trial court erred in instructing the jury;
7. Whether Arizona's felony murder statute is unconstitutional;
8. Whether conduct of the judge during trial denied defendant a fair trial;
9. Whether the prosecutor engaged in misconduct during closing argument; and
10. Whether the trial court erred by failing to provide the defense with the juror's names and addresses after the trial.

The sentencing issues are:

1. Whether the State failed to prove beyond a reasonable doubt that defendant previously had been convicted of a violent felony within the meaning of A.R.S. § 13–703(F)(2);
2. Whether the State failed to prove beyond a reasonable doubt that the killing was especially cruel or heinous.

3. Whether the application of A.R.S. § 13–703(F)(5) (expectation of pecuniary gain as aggravating circumstance) to this case is unconstitutional and, if not, whether the State nonetheless failed to prove beyond a reasonable doubt that defendant killed in expectation of pecuniary gain;
4. Whether the trial court erred by failing to find additional mitigating circumstances;
5. Whether the trial court gave insufficient weight to the two mitigating circumstances that it did find;
6. Whether imposing the death penalty for felony murder is unconstitutional, and whether the trial court erred by failing to conduct an *Enmund/Tison* hearing;
7. Whether defendant received adequate notice of the aggravating circumstances that would be used to support the death penalty;
8. Whether defendant's request to voir dire the trial judge was improperly denied;
9. Whether the prosecutor engaged in misconduct during sentencing;
10. Whether the trial judge improperly considered statements in the presentence report; and,
11. Whether Arizona's death penalty statute is unconstitutional.

## DISCUSSION

### I. *The Appeal*

#### 1. Limiting the Size of Defendant's Brief

■ In this case, after defendant requested permission to file a tendered 286–page opening "brief," we allowed him to file a 150–page brief and a 65–page reply. We also granted defendant eight exten-

automatically conduct an independent review of the record, see *State v. Schad*, 129 Ariz. 557, 573, 633 P.2d 366, 382 (1981), *cert. denied*, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982), and we do not conduct proportionality reviews,

see *State v. Salazar*, 173 Ariz. 399, 844 P.2d 566 (1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 707 (1993). We therefore do not address these two items as separate issues.

sions of time on his opening brief and two more extensions on his reply brief. Notwithstanding these concessions departing from the rules, see Ariz.R.Crim.P. 31.13(f), defendant argues that, by limiting the length of his brief, this court violated his right to due process. We have rejected this argument before. *See State v. Cruz,* 175 Ariz. 395, 400–401, 857 P.2d 1249, 1254–1255 (1993); *State v. Atwood,* 171 Ariz. 576, 658–59, 832 P.2d 593, 675–76 (1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1058, 122 L.Ed.2d 364 (1993); *State v. Amaya–Ruiz,* 166 Ariz. 152, 182–83, 800 P.2d 1260, 1290–91 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991). We do so again.

While this case was pending, the court amended Rule 31.13(f) to permit oversize briefs in capital cases, as well as to provide extra time to file them. If typed, as the briefs in this case are, opening briefs of up to 80 pages per side are permitted, and the appellant gets up to 40 more pages to reply. The briefs in this case could easily have been filed within the parameters of the amended rules, which provide ample opportunity for effective representation. Indeed, had the briefs in this case been edited to shorten them, they would have been much better. Winnowing of issues and argument is essential to good appellate advocacy. Here the "kitchen sink" approach has again been used. Many "issues" presented were not raised in the trial court. Other "issues" raised have been repeatedly and recently decided adversely to defendant. If preservation is sought to avoid issue preclusion, brevity should be employed. Many of defendant's issues are patently frivolous. Excessively long briefs confer no benefit on defendants, unless bulk and congestion for delay's sake is considered a benefit.

The most effective briefs this court receives, including those in death penalty cases, *all* comply with the liberal page limitations of the rules. Only a few offices in the state chronically abuse the rules in death penalty cases. Most have no trouble providing effective representation while filing sensibly sized briefs. Barring an advance showing of the most extraordinary circumstances, this court is committed, in all future cases, to enforcing the page limitations set by the rules.

## II. *The Trial*

### 1. "Death Qualification" of the Jury

Defendant argues that the trial court violated his state and federal constitutional rights by creating a conviction-prone jury when it excused seven jurors because of their alleged views on the death penalty. The record discloses that all of these jurors were excused because they could not be fair and impartial. Six of the jurors were removed without any discussion of the death penalty because they could not be fair and impartial in a first degree murder case. The seventh juror was removed because he could not be fair and impartial if the death penalty might be imposed. Because defendant did not object when these jurors were excused and affirmatively passed the jury panel at the close of voir dire, he is precluded from challenging the jurors on appeal. *See State v. Richmond,* 114 Ariz. 186, 192–93, 560 P.2d 41, 47–48 (1976); *cert. denied,* 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977); *State v. Diaz,* 142 Ariz. 136, 137, 688 P.2d 1028, 1029 (App.), *aff'd as modified,* 142 Ariz. 119, 688 P.2d 1011 (1984).

In any event, we have stated previously that

> [J]ury questioning regarding capital punishment is permissible where the questioning determines bias of a nature which would prevent a juror from performing his duty.... [V]oir dire questioning related to a juror's views on capital punishment is permitted to determine whether those views would prevent or substantially impair the performance of the juror's duties to decide the case in accordance with the court's instructions and the juror's oath.

*State v. Martinez–Villareal,* 145 Ariz. 441, 449, 702 P.2d 670, 678, *cert. denied,* 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985); *see also Lockhart v. McCree,* 476 U.S. 162, 167 n. 1, 106 S.Ct. 1758, 1761 n. 1,

90 L.Ed.2d 137 (1986). There are valid reasons for these questions, and the procedures employed by the trial court in asking these questions in this case were adequate. We find no error.

Defendant also argues, however, that excusing the jurors because they were allegedly against capital punishment violated article 2, section 12 of the Arizona Constitution because the framers "intended to forbid a trial court or prosecutor from attempting to disqualify or excuse prospective jurors solely on the basis of their philosophical, conscientious or religious beliefs." (Appellant's Opening Brief at 11.) We find no merit to this argument.

Article 2, section 12 reads, in part:

No religious qualification shall be required for any public office or employment, *nor shall any person be incompetent as a witness or juror in consequence of his opinion on matters of religion....*

(Emphasis added.)

As we have noted,

Art. 2, § 12 provides that no person shall be incompetent as a juror solely because of his opinion on matters of religion. It does not say an individual will be qualified as a juror *despite* his religious beliefs if those beliefs prevent him or her from being fair and impartial in a given case.... A person whose religious beliefs prevent him or her from finding a defendant guilty, notwithstanding proof beyond a reasonable doubt that defendant *is* guilty, is not impartial.

*State v. Fisher,* 141 Ariz. 227, 249, 686 P.2d 750, 772 (emphasis in original), *cert. denied,* 469 U.S. 1066, 105 S.Ct. 548, 83 L.Ed.2d 436 (1984). Whether or not religious scruples affected any juror's views on the death penalty, *Fisher* controls.

**2. Evidence From the Automobile Search**

Defendant argues that the trial court abused its discretion in denying his motion to suppress the victim's property, which was seized during a search of the car in which defendant was riding when arrested in Illinois. Defendant contends that the search violated both the Fourth Amendment of the United States Constitution and article 2, § 8 of the Arizona Constitution.

At trial, defendant argued that the Illinois police conducted an illegal investigative search without a warrant. The trial court found the search to be a valid inventory search performed incident to a lawful arrest. We agree. On appeal, defendant expands his argument and argues for the first time that the inventory search was not conducted pursuant to established police procedures.

Defendant was one of two passengers in a car stopped by Mark Wilkans of the Hodgkins, Illinois, police department. Wilkans smelled alcohol on the breath of the driver, who was then arrested for driving under the influence after failing field sobriety tests. Pursuant to departmental policy, Wilkans attempted to determine whether the car could be released to either of the passengers. When Wilkans radioed in information about both men, the dispatcher replied that one of the two was wanted on an outstanding felony warrant. Wilkans secured the passengers and arrested defendant after determining that he was wanted for murder in Pima County, Arizona. The other passenger was also detained because he was too intoxicated to drive.

Under Hodgkins police policy, the car had to be impounded because no occupant could legally operate it. Police policy was to inventory items in cars that were impounded. Given the large number of items in the car, Wilkans had the car towed to the station before conducting the inventory. At the station, police inventoried the contents of several sealed boxes and a duffle bag belonging to defendant.

On appeal, defendant argues for the first time that this search violated his constitutional rights because the state did not show that Hodgkins police policy was to inventory the contents of closed containers. In fact-intensive inquiries on motions to suppress, the court is not obliged to consider new theories from either side asserted for the first time on appeal, and there are good reasons for not doing so. *State v. Brita,*

158 Ariz. 121, 124, 761 P.2d 1025, 1028 (1988). Aside from this, defendant's position still lacks merit.

■ "[I]nventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." *Colorado v. Bertine,* 479 U.S. 367, 371, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987). Police may conduct inventory searches as long as they are conducted pursuant to standardized criteria and not because of mere suspicions of criminal activity. *Id.* at 375, 107 S.Ct. at 743. An officer "may be allowed sufficient latitude to determine whether a particular container should or should not be opened in light of the nature of the search and characteristics of the container itself." *Florida v. Wells,* 495 U.S. 1, 4, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1 (1990). When questioned about the department's policy for inventory searches, Wilkans testified that

> All property that comes into our possession from any vehicles that we are going to take and separate from the driver or owner has to be inventoried, *the contents therein have to be listed,* and any pre-existing damage to the car noted on the towing.

(Emphasis added.)

Hodgkins police policy is to inventory the contents of property taken into possession. That is what occurred here. The trial court, on the record before it, reasonably found this search to be a valid inventory search conducted pursuant to Hodgkins police policy. Because we agree with the trial court's finding, we do not reach the state's alternative theory of "inevitable discovery."

### 3. Precluding Evidence of Victim's Suicidal Tendencies

■ Defendant contends that the trial court deprived him of his state and federal constitutional rights because the court would not allow him to present evidence that the victim was suicidal and may have planned his own death.

On a motion in limine based on relevancy grounds, the trial court ruled that it would not permit evidence of the victim's alleged suicidal tendencies without some showing of relevance. Defendant, however, argues that the trial court impermissibly burdened his *right against self-incrimination* by allowing this evidence only if defendant testified. Defendant points to the following exchange:

> MR. PEASLEY [THE PROSECUTOR]: Can I say for the record, I think it's clear from discussions, I assume from discussions yesterday, that if the defendant were to get on the witness stand and say he helped this guy commit suicide, that the state's motion and the Court's ruling would change?

> THE COURT: It would be a different ballgame.

The trial court was merely stating that the defendant's testimony could make the suicide evidence relevant. The trial court did not state, however, that only the defendant's testimony could establish relevance.

Defendant's reliance on *State v. Rose,* 121 Ariz. 131, 138–39, 589 P.2d 5, 12–13 (1978), is therefore misplaced. In *Rose,* a burglary case, the defendant wanted to show that, on entering the victim's home, he lacked intent to commit a felony. The trial court would not allow the defendant to introduce evidence on this point unless the defendant first testified. *Id.* We held that forcing defendant to give up his right not to testify in order to present the defense of lack of intent violated his Fifth Amendment rights. *Id.*

All the defendant here was required to do was show relevance. Contrary to defendant's argument, that requirement violates neither the state nor federal constitutions. Judges have wide latitude in determining relevance. *Crane v. Kentucky,* 476 U.S. 683, 689, 106 S.Ct. 2142, 2146, 90 L.Ed.2d 636 (1986). Of course, in a proper case, evidence of a victim's suicidal tendencies may be relevant and competent, *see Marcum v. Commonwealth,* 308 Ky. 740, 215 S.W.2d 846, 847 (1948), but it is generally inadmissible if the facts preclude the possibility of suicide. *People v. Duncan,* 72

Cal.App.2d 247, 164 P.2d 313, 316 (1945); *Marcum*, 215 S.W.2d at 847–48.

In *Duncan*, the victim was found sitting on a sofa with a fatal knife wound through her heart. The knife that had inflicted the fatal wound was found on the roof of a neighboring apartment building. When the defendant attempted to introduce evidence that the victim had threatened to commit suicide several years before, the court held the evidence inadmissible because the facts precluded any possibility that suicide had been the cause of death. The court of appeals affirmed. *Duncan*, 164 P.2d at 316.

Similarly, here the evidence of the victim's suicidal tendencies was also irrelevant. The victim was brutally beaten, hogtied, and left to die. The offer of proof was that the victim had threatened suicide, had attempted to persuade a movie producer to film the event, and had wanted to deprive his estranged wife of their property. The evidence negates any possibility that the victim killed himself, and the offer of proof does not suggest that the victim arranged for someone else to kill him. Trial court evidentiary rulings will not be disturbed on appeal absent a clear abuse of discretion. *State v. Oliver*, 158 Ariz. 22, 30, 760 P.2d 1071, 1079 (1988). We find no abuse.

■ Finally, defendant argues that the trial court should have allowed the evidence in anyway because the state's motion in limine to exclude it was untimely. A pretrial motion in limine is merely a convenient substitute for evidentiary objections at trial. Moreover, "if a court has the power to extend the time to file motions, it has the discretion to hear late motions." *State v. Zimmerman*, 166 Ariz. 325, 328, 802 P.2d 1024, 1027 (App.1990) (citing *State v. Vincent*, 147 Ariz. 6, 8, 708 P.2d 97, 99 (App.1985)). If a trial court wishes to entertain a late motion in limine, it may do so. It may well consider that procedure preferable to hearing objections piecemeal at trial.

### 4. The Gruesome Photograph

Defendant argues that admission of a photograph of the victim deprived him of a fair trial under the state and federal constitutions because it was gruesome, had no probative value, and was highly inflammatory. Although we agree that it is gruesome, its admissibility was within the trial court's discretion.

■ "The trial court has discretion to decide whether to admit photographs, and we will not disturb its ruling absent a clear abuse of that discretion." *Amaya–Ruiz*, 166 Ariz. at 170, 800 P.2d at 1278 (citing *State v. Bailey*, 160 Ariz. 277, 772 P.2d 1130 (1989)). We apply a two-part analysis to determine whether potentially inflammatory photographs are admissible: (1) the photograph must be relevant to an issue in the case; and (2) the photograph's probative value must outweigh its prejudicial effect. *State v. Chapple*, 135 Ariz. 281, 288, 660 P.2d 1208, 1215 (1983); *see also* Ariz.R.Evid. 403.

■ The photograph is relevant first because it corroborates the testimony of Scott, Lisa, and Richard regarding defendant's statements that he had beaten and tied up the victim. Second, the photograph is relevant because it tends to show that the death was intentional or premeditated, which was at issue when the photograph was introduced. Both of these grounds are proper uses of photographic evidence. *State v. Thomas*, 110 Ariz. 120, 130, 515 P.2d 865, 875 (1973).

Although the state eventually relied solely on a theory of felony murder, the photo is still relevant. The state must prove each element of first degree murder beyond a reasonable doubt. Besides corroborating the testimony of several witnesses, the photograph tends to show that the death resulted from the underlying felony and tends to negate a natural or accidental death. The admission of the photograph was well within the trial court's discretion.

### 5. Pretrial Notice of State's Theory

■ An indictment must give defendant notice of the crimes charged. *State v. Ar-*

*nett,* 158 Ariz. 15, 18, 760 P.2d 1064, 1067 (1988). Defendant submits, however, that the state is also required to provide him with notice of the theory under which it will proceed at trial. We have previously rejected this argument and do so again. *See Arnett,* 158 Ariz. at 18, 760 P.2d at 1067; *State v. Tison,* 129 Ariz. 526, 538, 633 P.2d 335, 347 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982).

Defendant argues alternatively that, even if he originally received sufficient notice of the charges, the prosecutor misled him into believing that the state would proceed on a premeditated theory *as well as* on a felony murder theory. The gist of defendant's argument is that he was surprised and prejudiced by the state's election during trial to abandon premeditation and proceed solely on felony murder. From this, defendant argues that "reversal is required even if the formal charge gives notice appropriately." Defendant offers no authority for this proposition, and we reject it.

The record belies defendant's present claim of surprise, which is, in any event, immaterial. The law requires notice of the charges. The rules of procedure thereafter provide for discovery. The prosecutor has no independent duty to tell the defendant how the state intends to proceed or to elect theories in advance. *Arnett,* 158 Ariz. at 18, 760 P.2d at 1067; *Tison,* 129 Ariz. at 538, 633 P.2d at 347.

**6. Jury Instructions**

■ Defendant contends that the jury should have been instructed on premeditated murder despite the state's withdrawal of that theory. According to defendant, instructing on premeditation would also require instructing on other types of homicide as lesser included offenses of premeditated murder. The state contends that, under the facts of this case, defendant would not have been entitled to lesser included homicide instructions even if premeditation had not been withdrawn. We need not resolve this dispute, which involves a factual analysis of the record, because there is no obligation to instruct the jury on theories withdrawn in the prosecutor's discretion. *See State v. LaGrand,* 153 Ariz. 21, 30 n. 4, 734 P.2d 563, 572 n. 4 (prosecutor has discretion on what crimes to charge and prosecute), *cert. denied,* 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987).

■ Defendant argues that because he was originally charged with both premeditated and felony murder *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), constitutionally required the submission of premeditated murder and lesser included homicide offenses. We disagree. In *Beck,* the Court stated only that, in a capital case, due process entitles the defendant to instructions on any existing lesser included offenses to the crime charged that are factually supported by the evidence. *Id.; see also State v. Vickers,* 129 Ariz. 506, 513, 633 P.2d 315, 322 (1981). Even assuming the factual applicability of lesser included offenses in this case if premeditation had gone to the jury, *Beck* does not require the court to give instructions on crimes or theories no longer in issue.

Although this court has consistently held that felony murder contains no lesser included homicide offenses, defendant asks us to reconsider those holdings and to require trial judges to instruct juries on second degree murder and manslaughter in felony murder cases. We decline to do so.

Defendant also contends that burglary is a lesser included offense of the felony murder in this case and the jury should have been so instructed. We disagree but, in any event, the jury was instructed on both burglary and felony murder and defendant was convicted of both, so we fail to see how defendant would benefit by labelling burglary a lesser included offense of felony murder.

■ Finally, defendant argues that state and federal due process require that the jury be instructed on lesser *related* offenses, as distinguished from lesser *included* offenses. Lesser related offenses are offenses supported by the facts of the case, although not included in the charging

document. Some states recognize the doctrine of lesser related offenses. *See, e.g., People v. Rivera,* 186 Colo. 24, 525 P.2d 431 (1974). However, Arizona does not. The application of Arizona's doctrine of lesser *included* offenses depends on an analysis of the terms of the charging document or the elements of the crimes charged, rather than the evidentiary facts produced at trial. "The elements of the crime ... determine whether a crime is a lesser included offense ..., not the facts of a given case." *State v. Laffoon,* 125 Ariz. 484, 487, 610 P.2d 1045, 1048 (1980); *State v. Teran,* 130 Ariz. 277, 279, 635 P.2d 870, 872 (App.1981). Our rule is consistent with federal practice. *Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). The trial court did not err.

Defendant next argues that under *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), defendant could be convicted of felony murder only if the jury found that he displayed a reckless indifference to human life. We disagree. *Tison* does not speak to the mens rea necessary for a conviction for felony murder. Instead, *Tison* discusses the mens rea necessary to be sentenced to death *after* being convicted of felony murder. *See generally id.*

■ There is also no merit to defendant's argument that the trial court should have instructed the jury to acquit if they had a reasonable doubt about whether defendant was at the scene. Jury instructions are to be instructions on the applicable law, not comments on bits and pieces of evidence. *See* Ariz. Const., art. VI, § 27; *cf. State v. Goldston,* 126 Ariz. 171, 173, 613 P.2d 835, 837 (App.1980) (error to instruct that recent false statements by defendant, if made, were evidence of theft and burglary). The trial judge properly declined to give the requested instruction.

Defendant's contention that a proximate cause instruction was necessary fails because causation was not in issue. *See State v. Smith,* 160 Ariz. 507, 510, 774 P.2d 811, 814 (1989).

■ Defendant requested a *Willits* [2] instruction based on the state's alleged failure to test for fingerprints a knife found at the scene. *Willits* requires that an instruction be given when the State loses or destroys evidence that could help defendant's case. *Willits,* 96 Ariz. at 191, 393 P.2d at 279. No evidence suggests that the knife was used in the killing. Moreover, the state did not lose or destroy the knife, and defendant has not shown how the knife might be exculpatory. Finally, defendant had every opportunity to test the knife for himself and failed to do so; therefore, a *Willits* instruction would have been inappropriate.

Defendant also raises several additional objections, not raised at trial, concerning jury instructions. Absent fundamental error, these objections are precluded on appeal. Ariz.R.Crim.P. 21.3(c); *see also State v. Gendron,* 168 Ariz. 153, 154, 812 P.2d 626, 627 (1991).

■ First, defendant argues that the trial court erred by not giving an instruction defining "intentionally." Failure to define "intentionally," as used in an instruction, is not fundamental error. *State v. Barnett,* 142 Ariz. 592, 594–95, 691 P.2d 683, 685–86 (1984). Defendant contends that the court's instruction defining reasonable doubt is erroneous.[3] Giving this instruction is not fundamental error; therefore, we do not consider its merits in this case. *State v. Duzan,* 176 Ariz. 463, 862 P.2d 223 (App.1993).

■ The trial court also committed no error, fundamental or otherwise, by failing to instruct the jury that informer testimony

2. *State v. Willits,* 96 Ariz. 184, 393 P.2d 274 (1964).

3. The court's instruction reads as follows:
... The State must prove the defendant guilty beyond a reasonable doubt. The term reasonable doubt means doubt based upon reason. It does not mean an imaginary or possible doubt. It is a doubt which may arise in your minds after a careful and impartial consideration of all of the evidence or from the lack of evidence.

is inherently unreliable. *See State v. Gretzler*, 126 Ariz. 60, 89, 612 P.2d 1023, 1052 (1980) (instructing the jury to consider the testimony of an interested witness with skepticism is an impermissible comment on the evidence); *State v. Korte*, 115 Ariz. 517, 519, 566 P.2d 318, 320 (App.1977).

■ Defendant contends that the trial court committed fundamental error in failing to define "in furtherance of" as that term is used in Arizona's felony murder statute. That term, in the context of felony murder, is defined in Arizona case law to mean "death result[ing] 'from an action taken to facilitate the accomplishment of [the felony].'" *State v. Hallman*, 137 Ariz. 31, 38, 668 P.2d 874, 881 (1983) (quoting *State v. Arias*, 131 Ariz. 441, 443, 641 P.2d 1285, 1287 (1982)). "In furtherance of" is a common term. Assuming, however, that the term should have been defined, the failure to do so certainly is not fundamental error under the facts of this case. Consistent with defendant's boasts to his friends in Phoenix that he had "beaten the fuck out of some old man" and tied him up while burglarizing his house, the victim was found bound and bludgeoned. No evidence suggests that the death was not "in furtherance of" the burglary. Therefore, we find no fundamental error. *Cf. Gendron*, 168 Ariz. at 155, 812 P.2d at 628 (*citing Kentucky v. Whorton*, 441 U.S. 786, 789, 99 S.Ct. 2088, 2090, 60 L.Ed.2d 640 (1979)) (whether failure to give an instruction amounts to fundamental error "must be evaluated in light of the totality of the circumstances" of the case).

### 7. Arizona's Felony Murder Statute

Defendant asserts that Arizona's felony murder statute creates an unconstitutional mandatory presumption of guilt in violation of the due process clause or creates a strict liability crime that may lead to the death penalty in violation of the Eighth Amendment's ban on cruel and unusual punishment. Similar arguments have been rejected as meritless. *See State v. McLoughlin*, 139 Ariz. 481, 485, 679 P.2d 504, 508 (1984).

We have stated previously: "[t]he felony-murder rule, designed as it is to protect human life, represents sound public policy, is reasonably related to the end sought to be accomplished and is not constitutionally impermissible." *State v. Celaya*, 135 Ariz. 248, 255, 660 P.2d 849, 856 (1983) (quoting *State v. Goodseal*, 220 Kan. 487, 553 P.2d 279, 286 (1976)); *LaGrand*, 153 Ariz. at 30, 734 P.2d at 572; *State v. Montes*, 136 Ariz. 491, 498, 667 P.2d 191, 198 (1983).

### 8. Conduct of Trial Judge

Defendant complains that the trial judge's behavior during trial prejudiced him. Late in the case, defendant claimed that the trial judge had looked away from the jury during defendant's opening statement. A second claim is that the trial court was impatient with defense counsel during the defense case. Defendant's claims are based on counsel's subjective impressions.

■ Both parties are entitled to a trial presided over by a fair and impartial judge. *State v. Carver*, 160 Ariz. 167, 172, 771 P.2d 1382, 1387 (1989). The trial court is presumed to be impartial, and the party alleging bias must prove bias by a preponderance of the evidence. *Id.*

■ Defendant has placed no evidence in the record of bias by the trial judge. All that is referred to are unsupported assertions by defense counsel during trial, at least one of them long after the alleged fact. There is no substantiation of the claim of judicial misconduct, nor is there any showing of resulting prejudice.

### 9. Prosecutorial Misconduct

Defendant makes several claims of prosecutorial misconduct. Because none was raised at trial, all are precluded absent fundamental error. Ariz.R.Crim.P. 21.3; *see also State v. Smith*, 138 Ariz. 79, 83, 673 P.2d 17, 21 (1983), *cert. denied*, 465 U.S. 1074, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984).

■ Defendant claims that the state impermissibly commented on his failure to call a witness, "Shorty." Defense counsel, in the presence of the jury, promised to call

Shorty if the state did not. However, Shorty was not called. All the state did was remind the jury, in argument, that defense counsel had not done what she had promised to do. In the context of this case, the state's comment was not improper. *See State v. Jerdee*, 154 Ariz. 414, 417, 743 P.2d 10, 13 (App.1987).

■ Defendant claims that the state engaged in misconduct by stating in closing argument that certain questions by defense counsel were "a defense ploy," "improper," and "outrageous." The argument, in context, was well within the wide latitude afforded both parties in closing argument. *See, e.g., Amaya–Ruiz*, 166 Ariz. at 171, 800 P.2d at 1279.

■ Defendant complains of the prosecutor's statement in argument that defendant would be "tickled pink" if he were convicted of only one charge. Defendant contends that the statement is an impermissible statement of the prosecutor's personal opinion of defendant's guilt, citing Ariz. R.Sup.Ct. 42, ER 3.4(e); *State v. Abney*, 103 Ariz. 294, 440 P.2d 914 (1968); *State v. Van Den Berg*, 164 Ariz. 192, 196, 791 P.2d 1075, 1079 (App.1990); and *State v. Woodward*, 21 Ariz.App. 133, 134, 516 P.2d 589, 590 (1973). In the cases cited by defendant, the prosecutor commented directly on the defendant's guilt.

Here, defense counsel argued in closing that the jury could "acquit [defendant] of three charges, you can acquit him of two charges. But acquit him." In response, the prosecutor argued that "[i]f you convict [defendant] of one, he will be tickled pink, that is not holding him accountable for what he did. When you consider the evidence and testimony, return verdicts of guilty of all three counts."

In the context of this case, the prosecutor's statement was within the latitude afforded attorneys in final argument. *See Amaya–Ruiz*, 166 Ariz. at 171, 800 P.2d at 1279. Certainly, nothing approaching fundamental error occurred. *See Gendron*, 168 Ariz. at 155, 812 P.2d at 628.

■ Likewise, the prosecutor's statement in closing argument that if the jury found defendant guilty of burglary it had decided the felony murder charge as well did not amount to error, let alone fundamental error. *See Smith*, 138 Ariz. at 83, 673 P.2d at 21.

■ Finally, defendant argues that the prosecutor impermissibly shifted the burden of proof during closing argument.

The prosecutor argued:

But *defense has to consider what to say*, knowing there is a killing, knowing that three witnesses are going to come into court and say what the defendant said, talk about what he said he did to [the victim], *what's the explanation?*

(Emphasis added.)

Both the prosecutor and the judge informed the jury that, in the words of the prosecutor, "what the lawyers say is not evidence ..." and *"[t]he defendant doesn't have to do anything in a criminal trial, they don't have to do a thing, they don't have to call a witness* [.] ..."

The cases cited by defendant in support of his argument on this point deal with situations where the trial court instructed the jury in a manner that impermissibly shifted the burden of proof to the defendant. *See, e.g., State v. Tittle*, 147 Ariz. 339, 342, 710 P.2d 449, 452 (1985); *State v. Mincey*, 130 Ariz. 389, 397, 636 P.2d 637, 645 (1981); *cert. denied*, 455 U.S. 1003, 102 S.Ct. 1638, 71 L.Ed.2d 871 (1982); *State v. Sterling*, 148 Ariz. 134, 136, 713 P.2d 335, 337 (App.1985). Here, however, defendant claims that arguments *by the prosecutor* shifted the burden of proof to the defendant.

The challenged statements could not possibly have affected the jury's view of the burden of proof.

### 10. Release of Juror's Names and Addresses

■ After trial, defendant asked the judge to provide him with the names and addresses of the trial jurors, contending he was entitled to this information to investigate and see whether any juror was guilty of misconduct. The judge refused. Defen-

dant contends that, because this is a capital case, it justifies "the exercise of judicial authority to order more liberal discovery than usual." We disagree. For a discussion by this court of our concerns in this area in the grand jury context, *see State ex rel. Hastings v. Sult*, 162 Ariz. 112, 781 P.2d 590 (1989). In researching the cases cited by counsel, and through our own research, we find the judge's refusal of this information to be entirely proper.

### III. *The Sentencing*

#### 1. The Prior Conviction

Defendant contends that the state did not prove beyond a reasonable doubt that he has a prior conviction for a crime of violence under § 13–703(F)(2). He argues that no certified copy of the conviction was entered in the record and no stipulation between the parties exists. We agree that no certified copy of the conviction was introduced. Instead, the record discloses only an FBI report disclosing that a Thomas West was convicted of manslaughter in Illinois. Defendant argues that the rap sheet is not tied to him and is hearsay. These foundational and hearsay objections were not made in the lower court; therefore, we consider them precluded absent fundamental error. *State v. Allen*, 157 Ariz. 165, 170, 755 P.2d 1153, 1158 (1988). However, even considering the rap sheet to be properly in evidence, we agree with defendant that the information it contains is insufficient to prove an aggravating factor under § 13–703(F)(2).

We do not, however, agree with defendant's contention that there was no stipulation concerning the prior conviction. The absence of a certified copy is, perhaps, not surprising, in view of the following statement made by defense counsel at the first sentencing hearing:

> We are agreeable to stipulating that Mr. West has suffered a prior manslaughter conviction which satisfies the aggravation, the aggravating circumstance described in 13–703 which is that it was a crime involving violence I think is the language.

We read this for what it was intended to be—a stipulation.

The defendant complains, however, that he did not personally participate in the stipulation. "It is well established that a defendant may be bound by his counsel's trial strategy decision to waive even constitutional rights." *State v. Corrales*, 138 Ariz. 583, 595, 676 P.2d 615, 627 (1983). The only exception to this rule is that the defendant himself must consent to the waiver of his constitutional rights when the circumstances of the case are exceptional. *Henry v. Mississippi*, 379 U.S. 443, 451, 85 S.Ct. 564, 569, 13 L.Ed.2d 408 (1965) (counsel has authority to waive introduction of illegally seized evidence without defendant's consent). We do not believe a stipulation to facts that the state could easily have proved amounts to an exceptional circumstance requiring defendant's consent. The stipulation is binding until and· unless it is withdrawn.

A court may, of course, relieve a party of a stipulation on a motion for good cause shown, *State v. Sorrell*, 109 Ariz. 171, 173, 506 P.2d 1065, 1067 (1973) (citing *Gangadean v. Flori Investment Co.*, 106 Ariz. 245, 474 P.2d 1006 (1970)), but defendant never made such a request. Defense counsel said nothing at the second sentencing about the stipulation and did not request permission to withdraw from it. An Illinois appellate court opinion issued after the sentencing discloses that the defendant was indeed convicted of voluntary manslaughter, a crime included under § 13–703(F)(2). *See People v. West*, 209 Ill. App.3d 1019, 154 Ill.Dec. 724, 724–25, 568 N.E.2d 945, 945–46 *aff'd*, 145 Ill.2d 517, 164 Ill.Dec. 912, 584 N.E.2d 124 (1991).

We encourage stipulations to narrow issues and to promote judicial economy. *Id.* Defendant may have had good reasons for concentrating his sentencing hearing on issues other than his prior conviction. Even if it were error for the trial court to find the aggravating factor based on the stipulation, it was invited by the defendant. *See State v. Diaz*, 168 Ariz. 363, 365, 813 P.2d 728, 730 (1991) (party could not complain on appeal about the giving of an instruction he

himself requested). We therefore reject defendant's argument that the aggravating factor of a prior violent felony conviction was not adequately proved.

### 2. Especially Cruel, Heinous or Depraved

The trial court found this murder to be both especially cruel *and* especially heinous within the meaning of A.R.S. § 13–703(F)(6). Defendant challenges these findings.

■ We agree with the trial court's finding that the murder was especially heinous. This aggravating factor focuses on the murderer's state of mind. *Amaya–Ruiz*, 166 Ariz. at 178, 800 P.2d at 1286; *State v. Fulminante*, 161 Ariz. 237, 255, 778 P.2d 602, 620 (1988). In *State v. Gretzler*, 135 Ariz. 42, 52, 659 P.2d 1, 11, *cert. denied*, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), we set forth several specific factors suggested by earlier cases as appropriate in determining whether heinousness is present. Later cases have found additional factors to be appropriate considerations, but they are not present here. *State v. Stanley*, 167 Ariz. 519, 529, 809 P.2d 944, 954, *cert. denied*, —— U.S. ——, 112 S.Ct. 660, 116 L.Ed.2d 751 (1991) (relationship between defendant and victim); *State v. Smith*, 141 Ariz. 510, 511–12, 687 P.2d 1265, 1266–67 (1984) (killing to eliminate witness). The *Gretzler* factors are (1) whether the murderer relished the murder; (2) whether the murderer inflicted gratuitous violence on the victim beyond that necessary to commit the crime; (3) whether the murderer inflicted needless mutilation on the victim; (4) whether the murder was senseless; and (5) whether the victim was helpless. *Gretzler*, 135 Ariz. at 52, 659 P.2d at 11.

■ Four of the five *Gretzler* factors are present here. Defendant relished the murder, he inflicted gratuitous violence beyond that necessary to commit the crime, the victim was helpless, and the murder was senseless. When defendant returned to Phoenix, he told people that he "beat the fuck out of some old man" and bragged about cuts and bruises on his hand coming

from beating up "the old man he ripped off." This shows that defendant relished his crime. Certainly, tying the victim up and pummeling his face until many bones were broken and the victim's hard palate detached, was gratuitous violence far beyond anything necessary to commit burglary. Just as certainly, the victim was helpless. Finally, the murder was senseless. A murder is senseless if it was unnecessary to achieve the defendant's goal. *State v. Comer*, 165 Ariz. 413, 429, 799 P.2d 333, 349 (1990), *cert. denied*, 499 U.S. 943, 111 S.Ct. 1404, 113 L.Ed.2d 460 (1991). Defendant did nothing to render aid after the crime, even when urged to.

The trial judge correctly found the murder to be especially heinous. Because the words in the statute "especially cruel, heinous, *or* depraved," are stated in the disjunctive, a finding of any one of the three factors will suffice for finding that this aggravating factor exists. *See, e.g., State v. Walton*, 159 Ariz. 571, 587, 769 P.2d 1017, 1033 (1989), *aff'd*, *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990). We, therefore, do not separately analyze defendant's attack on the trial court's finding that the murder was also especially cruel.

### 3. Pecuniary Gain

■ Defendant challenges the trial judge's finding that the murder was committed for pecuniary gain. In *State v. Clark*, 126 Ariz. 428, 436, 616 P.2d 888, 896, *cert. denied*, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), this court held that if the expectation of pecuniary gain is among the causes of the killing, the aggravating factor of pecuniary gain is established. *See also LaGrand*, 153 Ariz. at 36, 734 P.2d at 578. The evidence here showed that defendant was motivated by a desire to steal the victim's property. Certainly, the expectation of pecuniary gain was among the causes of the victim's death. The trial judge's finding is correct.

■ Defendant argues, however, that the pecuniary gain finding violates the Eighth Amendment because it repeats an

element of the crime of burglary, resulting in an insufficient narrowing of the class of death eligible defendants. Dealing with a similar argument in the robbery context, we have held that the facts necessary to prove pecuniary gain are not the same as those necessary to prove robbery. *State v. Carriger*, 143 Ariz. 142, 161, 692 P.2d 991, 1010 (1984), *cert. denied*, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985). In *Carriger*, we stated that "[p]roving a taking in a robbery does not *necessarily* prove the motivation for a murder, and the state cannot be said to be using one fact to prove two different items." *Id.* (Emphasis added.) This distinction is equally true for burglary. The defendant need not intend to kill the victim or even to take his property to be guilty of burglary. Additionally, a felony murder committed in the course of a burglary does not necessarily result in a finding of pecuniary gain, because burglary may be based on the defendant's intent to commit any felony, not just theft. *See* A.R.S. § 13–1506; *State v. Miller*, 108 Ariz. 441, 445, 501 P.2d 383, 387 (1972). Proving a burglary, therefore, does not necessarily prove pecuniary motivation for the murder.

Federal cases hold that Arizona's capital sentencing scheme, as construed by this court, does narrow the class of death eligible defendants sufficiently to comply with the Eighth Amendment. A capital sentencing scheme is constitutional if it " 'genuinely narrow[s] the class of persons eligible for the death penalty and ... reasonably justif[ies] the imposition of a more severe sentence on the defendant compared to others found guilty of murder.' " *Lowenfield v. Phelps*, 484 U.S. 231, 244, 108 S.Ct. 546, 554, 98 L.Ed.2d 568 (1988) (quoting *Zant v. Stephens*, 462 U.S. 862, 877, 103 S.Ct. 2733, 2742, 77 L.Ed.2d 235 (1983)).

Defendant's argument that we must narrow the class of first degree murderers for pecuniary gain into death eligible and non-death eligible cuts too narrowly. What is required is that the class of murderers in general be narrowed into death eligible and non-death eligible. Arizona does this first at the guilt phase, by making only those

guilty of first degree murder potentially death eligible. A.R.S. § 13–703(A). Further, only certain first degree murderers are death eligible—those who commit a first degree murder with one or more aggravating circumstances present. A.R.S. § 13–703(E). That all first degree murders committed for pecuniary gain are death eligible does not render Arizona's capital sentencing scheme unconstitutional. *See Lowenfield*, 484 U.S. at 241–46, 108 S.Ct. at 553–55 (upholding Louisiana's capital sentencing scheme where only first degree murderers were death eligible, and four of the five types of first degree murder led automatically to a death qualifying aggravating circumstance that was identical to an element of the crime). We therefore reject defendant's argument and conclude that Arizona's aggravating factor of pecuniary gain is constitutional.

### 4. Mitigating Circumstances Found Not to Exist

 Defendant argues that the trial judge improperly rejected several mitigating factors. The sentencing judge must consider "any aspect of the defendant's character or record and any circumstance of the offense relevant to determining whether a sentence less than death might be appropriate." *State v. McCall*, 139 Ariz. 147, 162, 677 P.2d 920, 935 (1983), *cert. denied*, 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). Defendant must establish mitigating factors by a preponderance of the evidence. *See State v. McMurtrey*, 143 Ariz. 71, 73, 691 P.2d 1099, 1101 (1984), *appeal after remand*, 151 Ariz. 105, 726 P.2d 202 (1986), *cert. denied*, 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 530 (1987). Additionally, the trial court has discretion in deciding how much weight to give to the mitigating factors that the defendant offers. *State v. Atwood*, 171 Ariz. at 648, 832 P.2d at 665. On an independent review of the record, see *State v. Gillies*, 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983), we find that the trial judge correctly concluded that defendant has established two mitigating factors.

Defendant claims that the fact that his conviction was based on a felony murder theory should be considered a mitigating circumstance. However, in a similar case, we rejected that claim, and we reject it here as well. *See State v. Zaragoza*, 135 Ariz. 63, 70, 659 P.2d 22, 29, *cert. denied*, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1356 (1983); *see also Atwood*, 171 Ariz. at 648–49, 832 P.2d at 665–666. In *Zaragoza*, we stated that giving a felony murder instruction may be mitigating if defendant can show that he did not intend to kill the victim or know with substantial certainty that his acts would cause death. 135 Ariz. at 70, 659 P.2d at 29.

There, the defendant "repeatedly hit the victim on the head and left her bleeding in the alley." *Id.* The court concluded that "[i]t is reasonable to conclude, in the absence of any evidence to the contrary, that one who beats a 78 year old woman on the head and leaves her bleeding in an alley intends to kill or knows with substantial certainty that his action will cause death." *Id.*

Here, defendant repeatedly beat a 53-year-old man on the head and left him bound hand and foot and bleeding in an empty house. Later, he deliberately refused to seek aid, although urged to do so. Certainly, it is reasonable to conclude that defendant "intend[ed] to kill or [knew] with substantial certainty that his action [would] cause death." *Id.* Thus, the fact that it was a felony murder is not mitigating.

Almost unbelievably, defendant argues that the facts of the crime (victim left ungagged, door left open, and light left on) should be considered mitigating. We easily reject this contention.

Next, defendant claims intoxication as mitigation. Defendant's own evidence refutes that claim. A defense expert testified:

> MR. DAWLEY: Okay. So you are not offering an opinion, so everyone is clear, as to whether he was under the influence at the particular time of the offense?
>
> EXPERT: No. I am not willing to do that.

The trial judge was justified in rejecting intoxication as a mitigating factor. *See Atwood*, 171 Ariz. at 650–51, 832 P.2d at 667–68.

The trial judge also was justified in finding that defendant's chemical dependency did not significantly impair his ability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law under A.R.S. § 13–703(G)(1). *See Zaragoza*, 135 Ariz. at 70, 659 P.2d at 29. Although defendant presented evidence that his chemical dependency made his choices in life more difficult, and that he made poor choices as a result of his addiction, the defense expert would not testify that defendant could not differentiate between right and wrong or conform his conduct to the requirements of the law. The trial court correctly determined that defendant's substance abuse did not establish the statutory mitigating factor specified in § 13–703(G)(1). *See Atwood*, 171 Ariz. at 651, 832 P.2d at 668. The trial court did find defendant's substance abuse to be a nonstatutory mitigating factor, discussed *infra*.

Defendant also argues that his failure to complete a drug rehabilitation program should have been considered in mitigation. The evidence suggests that defendant turned down the opportunity to enter such a program on three separate occasions; therefore, the trial judge correctly rejected this claim of mitigation. *See Atwood*, 171 Ariz. at 653–54, 832 P.2d at 670–71 (defendant's failure to take advantage of available therapy indicated unwillingness to be rehabilitated).

Defendant submits that when drug free he has good work skills, is nonviolent, and is law abiding. Given defendant's repeated rejection of opportunities to enter drug rehabilitation, even if what defendant claims is true, the evidence is not mitigating in this case. *Cf. id.*

Defendant submits that he had trouble in school, possibly had a learning disability, and only completed nine years of education. He claims that this is mitigating. There is no showing at all that defen-

dant did not know the difference between right and wrong or could not conform his conduct to the dictates of the law. *See* A.R.S. § 13–703(G)(1). Nor does the evidence on these subjects show any nonstatutory mitigation.

■■■ Defendant claims his age, 28 at the time of the crime, is a mitigating circumstance. We reject this claim, particularly in light of defendant's prior criminal history and experience with law enforcement. *See, e.g., Walton,* 159 Ariz. at 589, 769 P.2d at 1035; *State v. Vickers,* 159 Ariz. 532, 546, 768 P.2d 1177, 1191 (1989), *cert. denied,* 497 U.S. 1033, 110 S.Ct. 3298, 111 L.Ed.2d 806 (1990).

■■■ Defendant claims that he expressed remorse and that is a mitigating factor. *State v. Wallace,* 151 Ariz. 362, 368–69, 728 P.2d 232, 238–39 (1986). Defendant never publicly accepted responsibility for his crime; therefore, his remorse for the death of the victim, if any, is ineffectual. *See Carriger,* 143 Ariz. at 162, 692 P.2d at 1011. Much of the evidence, including defendant's own actions and words, belie his present claim of remorse.

Defendant contends that he enjoys the support of his family and has a child, which should be considered in mitigation. When not in prison, defendant's contact with his family and child was minimal. We do not see how this "family support," to the extent that it exists, is mitigating. *See Smith,* 141 Ariz. at 512, 687 P.2d at 1267 (rejecting claim that the defendant having a small child was mitigating when there was little contact and no apparent "family tie"). We also find no merit to defendant's contention that his work skills, to the extent that they exist, should be considered mitigating.

■■■ Defendant's claim that his cooperation with authorities in waiving his extradition hearing is a mitigating factor is meritless. *See State v. Jordan,* 126 Ariz. 283, 289, 614 P.2d 825, 831, *cert. denied,* 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980). The trial judge correctly found that defendant's failure to contest an event that would certainly have occurred without his consent did not create a mitigating circumstance.

The trial judge also correctly declined to find the circumstances of defendant's prior manslaughter conviction to be mitigating. The trial judge found that the defense version of the facts of the Illinois offense, a version not brought out at trial in Illinois, was incredible. The trial judge is in the best position to determine the credibility of witnesses. *State v. Fierro,* 166 Ariz. 539, 553, 804 P.2d 72, 86 (1990). We accept the trial judge's finding that the circumstances of defendant's previous manslaughter conviction were not mitigating. *Cf. Atwood,* 171 Ariz. at 654–55, 832 P.2d at 671–72 (finding meritless the defendant's argument that facts of prior conviction were mitigating after reviewing record of that prior conviction).

### 5. Mitigating Circumstances Found to Exist

■■■ The trial judge determined that defendant had proved, by a preponderance of the evidence, two mitigating factors: defendant had a substance abuse problem and suffered a deprived childhood. Based on our independent review of the record, we agree that these two mitigating factors have been established by a preponderance of the evidence. Defendant claims, however, that the two mitigating factors were given insufficient weight at sentencing.

We agree with the trial judge that these two mitigating factors are insufficient to overcome the aggravating factors; therefore, leniency is not appropriate. *See* A.R.S. § 13–703(E). Defendant had ample opportunities to overcome his substance abuse problem. Defendant declined three separate referrals to drug treatment. We cannot ascribe much weight in mitigation to a problem for which defendant refuses to take responsibility. *Cf. Atwood,* 171 Ariz. at 653–54, 832 P.2d at 670–71 (defendant's lack of interest in available therapy does not warrant leniency).

We also cannot ascribe much weight to defendant's difficult family background, because defendant has not shown how his

difficult background affected his behavior. *State v. Wallace*, 160 Ariz. 424, 427, 773 P.2d 983, 986 (1989), *cert. denied*, 494 U.S. 1047, 110 S.Ct. 1513, 108 L.Ed.2d 649 (1990). Every person is affected by the circumstances of his or her upbringing. Evidence showed that defendant's brother, a product of the same home, has undertaken considerable effort to straighten out his life and avoid the troubles that have plagued defendant. We see nothing in the record by way of difficult family background that excuses defendant from the rules of conduct that apply to everyone else. *See Gretzler*, 135 Ariz. at 58, 659 P.2d at 17.

After conducting an independent review of the record, *see Gillies*, 135 Ariz. at 511, 662 P.2d at 1018, we find that the mitigating factors in defendant's favor are not weighty enough to overcome the aggravating factors against him.[4]

### 6. Felony Murder; *Enmund/Tison* Hearing

■ Defendant argues that the trial court did not make a finding sufficient to comply with *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), and, therefore, his death sentence must be vacated. We disagree. The trial court found on the record that "the defendant knew or had reason to know that the deceased was dying or had suffered serious physical injuries." Under the United States Supreme Court's holding in *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987), when the defendant is convicted of felony murder, he can be sentenced to death only if he was a major participant in the crime and displayed reckless indifference to human life. The trial court's statement is sufficient under *Tison*.

Aside from that, the jury's verdict here supplies the necessary finding to meet the more stringent *Enmund* requirement that defendant either killed, attempted to kill, or intended to kill the victim. *See State v. Atwood*, 171 Ariz. at 649–50, 832 P.2d at 666–67. In *Atwood*, this court held that when the case involves a single defendant who actually kills, the jury's verdict, based on instructions given them by the trial judge, supplies the necessary *Enmund* finding. *Id.*

> Here, the trial judge instructed the jury: A person commits first degree murder if such person acting alone or with one or more other persons commits or attempts to commit burglary and in the course of and in furtherance of such offense or immediate flight from such offense such person or another person causes the death of any person.

Unlike *Atwood*, the instruction here theoretically allowed the jury to find defendant guilty of first degree murder upon the participation of another in the felony. However, the evidence in this case showed that no one else participated in the burglary. Therefore, the jury could only have reached its verdict if it found that defendant killed the victim.[5]

### 7. Notice of Aggravating Circumstances

■ Defendant contends that the state is required to give him pretrial notice of the statutory aggravating factors it will rely on at sentencing. "There is no requirement that a defendant be advised in the indictment or information of the statutory penalty, or that he be advised what aggravating circumstances will be presented at sentencing in the event of a conviction." *State v. Richmond*, 136 Ariz. 312, 316, 666 P.2d 57, 61, *cert. denied*, 464 U.S. 986, 104

**4.** We stated earlier in this opinion that we believe this to be an appropriate death penalty case even if it be assumed that the Illinois voluntary manslaughter conviction was not properly proved.

**5.** Defendant also argues that notwithstanding *Tison, State v. McDaniel*, 136 Ariz. 188, 199, 665 P.2d 70, 81 (1983), prevents a defendant from being sentenced to death under the Arizona

Constitution if the defendant merely displayed a reckless indifference to human life in committing felony murder. Defendant also argues that A.R.S. § 13–703 requires more than the reckless indifference to human life standard enunciated in *Tison*. Because the jury found that defendant actually killed, we need not reach this argument in this case.

S.Ct. 435, 78 L.Ed.2d 367 (1983). Instead, due process requires only that the prosecution disclose aggravating circumstances "sufficiently in advance of the hearing that the defendant will have a reasonable opportunity to prepare rebuttal." *State v. Ortiz*, 131 Ariz. 195, 207, 639 P.2d 1020, 1032 (1981), *cert. denied*, 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982), *disapproved on other grounds, State v. Gretzler*, 135 Ariz. 42, 57 n. 2, 659 P.2d 1, 16 n. 2 (1983).

▆ Defendant received notice of the aggravating factors to be used against him on April 19, 1988. The sentencing hearing was not held until August 1, 1988. Defendant had ample time to prepare rebuttal to the aggravating factors to be used against him. We hold that the post-trial notice of aggravating factors was adequate.[6] *Id.*

### 8. Request to Voir Dire the Trial Judge

▆ Defendant contends he has a due process right to voir dire the trial judge concerning *possible* bias or predisposition to impose the death penalty. He does not. *Stanley*, 167 Ariz. at 527, 809 P.2d at 952; *State v. Rossi*, 154 Ariz. 245, 247–48, 741 P.2d 1223, 1225–26 (1987).

### 9. Prosecutorial Misconduct

Defendant complains of alleged prosecutorial misconduct at the sentencing hearing. Defendant did not object below; therefore, his claims are precluded absent fundamental error. *Gendron*, 168 Ariz. at 155, 812 P.2d at 628.

In a legal argument to the court in support of the validity of Arizona's "especially cruel, heinous or depraved" factor as limited and defined by case law, the prosecutor argued:

The *Maynard*[7] situation is absolutely distinguishable from this case ... in Arizona, not only does your Honor look at this case, make that kind of proportionality review but our Arizona Supreme

Court in every single case makes the same kind of review.

Defendant claims this argument runs afoul of *Caldwell v. Mississippi*, 472 U.S. 320, 328–29, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985). There the United States Supreme Court stated:

[I]t is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere.

*Id.*

*Caldwell* is easily distinguishable. There, the prosecutor told a sentencing jury that a death sentence is automatically reviewable by the Supreme Court. *Id.* at 325–26, 105 S.Ct. at 2637–38. This argument could be considered a plea for the jury to take its responsibility for the death penalty less seriously. Here, the sentencer is the judge. The judge is presumed to know the law. *See Walton*, 497 U.S. 639, 110 S.Ct. 3047 (1990) (when jury is sentencer, it is important that it be instructed properly; judge-sentencer is presumed to know the law). The prosecutor here was merely trying to show the judge how the Arizona sentencing scheme differs from that at issue in *Maynard*. Obviously, the state was not suggesting that the judge should abandon responsibility for his decision.

Defendant also claims that the state's reference to defendant's failure to call two psychological witnesses was prosecutorial misconduct. Defendant retained experts to assess his psychological condition. The trial judge knew this; indeed, he precluded the state from interviewing the experts or discovering the results of their examinations until and unless they testified, because of physician-patient privilege. At sentencing, the prosecutor pointed out that the defendant had not called the experts.

---

**6.** After the sentencing in this case, Ariz. R.Crim.P. 15.1(g) was adopted. It provides that the state shall, within 10 days after verdict, give notice of the aggravating factors upon which it intends to rely.

**7.** *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988).

This was not misconduct. *State ex rel. McDougall v. Corcoran*, 153 Ariz. 157, 160, 735 P.2d 767, 770 (1987).

### 10. Presentence Report

■ Defendant argues that inadmissible information was included in the presentence report. Specifically, defendant refers to hearsay in the report and to references to his refusal to meet with the probation officer. Defendant did not object in the trial court; therefore, the issue is precluded on appeal absent fundamental error. *State v. Marquez*, 127 Ariz. 3, 7, 617 P.2d 787, 791 (App.1980); *see also Van Den Berg*, 164 Ariz. at 196, 791 P.2d at 1079 (failure to object to closing argument precludes consideration on appeal absent fundamental error). Where inadmissible material has been included in a presentence report in a capital case, we have stated:

> Absent proof to the contrary, the trial judge in a capital case must be presumed to be able to focus on the relevant sentencing factors and to set aside the irrelevant, the inflammatory, and the emotional factors.

*State v. Beaty*, 158 Ariz. 232, 244, 762 P.2d 519, 531 (1988), *cert. denied*, 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 708 (1989); *see also Fierro*, 166 Ariz. at 548, 804 P.2d at 81.

Even if the complained-of material was inadmissible, defendant has not shown that the trial judge considered it and, hence, defendant has shown no prejudice.

### 11. Arizona's Death Penalty Statute

Defendant makes a host of arguments challenging the constitutionality of Arizona's capital sentencing scheme. We find no merit in any of them. The great majority of defendant's arguments have been resolved by the United States Supreme Court in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), or by previous decisions of this court. Defendant has advanced no sufficient argument why we should change our earlier rulings, and we decline to do so.

Defendant argues that the death penalty cannot be imposed unless a jury, as opposed to a judge, determines whether aggravating and mitigating circumstances exist, because aggravating and mitigating factors are the functional equivalent of elements of the crime. *Walton* rejects this contention. *Id.* at 647–50, 110 S.Ct. at 3054–55; *see also State v. Correll*, 148 Ariz. 468, 483–84, 715 P.2d 721, 736–37 (1986). Defendant, however, argues that the equal protection clause, also demands that a jury make the determination, because in Arizona certain noncapital defendants are entitled to a jury determination of sentence enhancement factors. *See* A.R.S. § 13-604(K). Notwithstanding the fact that sentence enhancement and aggravation are different, compare A.R.S. § 13-604(K) with A.R.S. §§ 13-702, 13-703, this precise argument has also been rejected by the Ninth Circuit Court of Appeals. *See Clark v. Ricketts*, 958 F.2d 851, 859 (9th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 117, 121 L.Ed.2d 73 (1992). We agreed with the Ninth Circuit's position in *State v. Landrigan*, 176 Ariz. 1, 6, 859 P.2d 111, 116 (1993). *See also State v. Spencer*, 176 Ariz. 36, 45, 859 P.2d 146, 155 (1993); *State v. Lopez*, 175 Ariz. 407, 857 P.2d 1261 (1993).

Next, defendant argues that Arizona's death penalty statute is unconstitutional because it does not sufficiently channel the sentencer's discretion in imposing the death penalty. We rejected this argument in *State v. Greenway*, 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991). That the prosecutor has discretion to request the death penalty does not alter this conclusion. *See, e.g., State v. White*, 168 Ariz. 500, 515, 815 P.2d 869, 884 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1199, 117 L.Ed.2d 439 (1992); *Rossi*, 146 Ariz. 359, 366, 706 P.2d 371, 378.

We have also previously dealt with and again reject defendant's argument that Arizona's death penalty statute mandates that the death sentence be imposed without considering whether death is the appropriate penalty in an individual case. *See Walton*, 497 U.S. at 651–52, 110 S.Ct. at 3056; *Vickers*, 159 Ariz. at 543–44, 768 P.2d at 1188–

89. We also find no merit in defendant's argument that Arizona's death penalty statute is unconstitutional because it does not allow consideration of mitigating factors that are not proved by the defendant by a preponderance of the evidence. *Walton*, 497 U.S. at 649–52, 110 S.Ct. at 3055–56.

We also reject defendant's argument that imposing the death penalty is cruel and unusual punishment under article 2, section XV of the Arizona Constitution. *See White*, 168 Ariz. at 515, 815 P.2d at 884. Further, we have previously rejected defendant's argument that the death penalty has been applied in a discriminatory fashion in Arizona, and we reject the argument once again. *See id.* at 513–14, 815 P.2d at 882–83 (death penalty must be decided on a case-by-case basis and, in any event, defendant had produced no evidence of discriminatory intent); *see also Richmond*, 136 Ariz. at 321–22, 666 P.2d at 66–67.

Defendant also contends that the death penalty statute is unconstitutional because this court has not differentiated adequately the meaning of "heinousness" and "depravity" under A.R.S. § 13–703(F)(6). This argument is without merit, and we reject it. *See, e.g., Amaya–Ruiz*, 166 Ariz. at 178, 800 P.2d at 1286; *Fulminante*, 161 Ariz. at 254, 778 P.2d at 619 (citing *Ortiz*, 131 Ariz. at 206, 639 P.2d at 1031) (defining "heinous" to mean "hatefully or shockingly evil" and "depraved" to mean "marked by debasement, corruption, perversion, or deterioration," with both referring to the defendant's state of mind at the time of the crime). In sum, we find no merit in defendant's arguments that Arizona's capital sentencing scheme is unconstitutional under the state and federal constitution, and we reject them.

Finally, defendant urges us to conduct a proportionality review and, based upon that review, to reduce his death penalty to life imprisonment. Although this court, in every death penalty case, independently considers and weighs aggravating and mitigating circumstances, and has done so in this case, it does not conduct comparative proportionality reviews. *State v. Salazar*, 173 Ariz. at 416–17, 844 P.2d at 583–84.

## DISPOSITION

We have considered the issues presented on appeal and find that defendant's convictions are proper. We have conducted an independent review of the defendant's death sentence and have independently weighed the aggravating and mitigating factors applicable thereto. We find the sentence appropriate. We have searched the record for fundamental error pursuant to A.R.S. § 13–4035; *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969), and have found none. We therefore affirm the convictions and sentences.

FELDMAN, C.J., and CORCORAN, ZLAKET, and MARTONE, JJ., concur.