951 P.2d 454

**STATE of Arizona, Appellee.**

v.

**Charles Bradley RIENHARDT, Appellant.**

No. CR–96–0294–AP.

Supreme Court of Arizona,
En Banc.

Dec. 24; 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section Ginger Jarvis, Assistant Attorney General, Phoenix, for the State of Arizona.

Harriette P. Levitt, Tucson, for Charles Bradley Rienhardt.

## OPINION

MARTONE, Justice.

A jury convicted Charles Rienhardt of one count of first degree murder, one count of kidnaping, one count of attempted transfer of a dangerous drug, and one count of attempted arson of a structure. The trial court sentenced him to death for the murder, and to prison terms for the non-capital convictions. Appeal to this court is automatic under Rules 26.15 and 31.2(b), Ariz. R.Crim. P., and direct under A.R.S. § 13–4031. We affirm his convictions and sentences.

## I. BACKGROUND

On the evening of September 4, 1995, Rienhardt sought to purchase a large quantity of methamphetamines in Tucson. He arranged to meet two men at a friend's apartment, Michael Ellis, the victim in this case, and James Breedlove. Once the deal was made, Rienhardt gave Breedlove $1,180 with the understanding that Breedlove would return to the apartment with the drugs. In order to secure the return of Breedlove, the parties agreed that Michael Ellis would remain in the apartment with Rienhardt.

Breedlove never came back. As the evening progressed, Rienhardt became increasingly agitated. He threatened Ellis, and insisted that Ellis locate Breedlove by telephone. At one point, Rienhardt told Breedlove's girlfriend, over the phone, that if Breedlove did not return, he would take Ellis on a hike in the desert, blindfold him,

hang him over the edge of a cliff, remove the blindfold, and drop him. After midnight, Charles Nadeau, a friend of Rienhardt's, arrived at the apartment. For reasons that are not clear, Nadeau struck Ellis across the face hard enough to make him bleed. At one point, Breedlove phoned the apartment with news that the deal was taking longer than expected. Rienhardt told Breedlove that for every ten minutes that Breedlove did not return, Rienhardt would hurt Ellis some more.

Rienhardt and Nadeau eventually left the apartment with Ellis. When two witnesses returned to the apartment, they discovered a trail of blood leading from the apartment, blood on the living room carpet, blood on Ellis's chair, and pieces of teeth on the floor. They also discovered a shotgun on a couch near where Ellis had been seated.

Later that evening, Rienhardt contacted Christina George, his girlfriend, and told her to meet him at a Circle K market near Reddington Pass because there was an emergency and he needed a ride. George drove to the appointed spot in a stolen Toyota MR–2, waited for some time, and then decided to drive up Reddington Pass to a place where she and Rienhardt had recently been jumping off of rocks. Less than a mile up the dirt road, she ran into Rienhardt and Nadeau on foot. Rienhardt told her that their white Buick got stuck on a rock. He also told her that Ellis had not died from shotgun wounds, that they had dropped a rock on his head, and that, "I have brains all over my pants." Tr. of Feb. 16, 1996 at 38.

The group dislodged the Buick, and drove both cars to a nearby shopping plaza. They decided to burn the Buick. As George and Nadeau prepared to burn the car, a sheriff's deputy approached the group. The three jumped into the stolen MR–2, a chase ensued, and the three were arrested. The white Buick, left at the shopping plaza, had blood smeared on the driver's side, a bloody towel inside, and a large blood stain in the back seat. Police found Michael Ellis's wallet in the Buick, and a shotgun with a missing stock.

The next night, Charles Nadeau led police to Ellis's body near the dirt road leading to Reddington Pass. He had been severely beaten about the head and torso, had shotgun wounds, and had had one or two large rocks dropped on his head. Pieces of a wood shotgun stock were found around a pool of blood near the body. The pieces matched the make and model of the shotgun found in the abandoned Buick.

Charles Nadeau's trial on the above charges was severed. Christina George was charged with attempted arson, and with hindering prosecution. George also faced unrelated felony charges. George entered into a plea agreement in return for her testimony against Rienhardt at trial.

## II.  ISSUES

On appeal, Rienhardt raises the following issues:

A.   Trial Issues

1.   Whether the trial court committed reversible error by admitting gruesome photographs.

2.   Whether Rienhardt was denied his constitutional rights to due process by virtue of the late disclosure and non-disclosure of letters exchanged between Rienhardt and Christina George.

3.   Whether the trial court violated Rienhardt's rights to due process by allowing the state to introduce evidence of an unrecorded conversation between Christina George and Rienhardt's defense counsel.

4.   Whether the trial court committed reversible error by allowing the state to identify Rienhardt's voice through circumstantial evidence.

5.   Whether the evidence was sufficient to sustain a conviction on count five, attempted arson of a structure.

B.   Sentencing Issues

1.   Whether the trial court erred in finding that Rienhardt himself killed, attempted to kill, or planned to kill pursuant to *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

2. Whether the trial court erred in finding that the murder was committed in an especially heinous, cruel, or depraved manner pursuant to A.R.S. § 13–703(F)(6).

3. Whether the trial court erred in finding that the murder was committed in expectation of the receipt of anything of pecuniary value pursuant to A.R.S. § 13–703(F)(5).

4. Whether the trial court properly balanced aggravating and mitigating factors before imposing the death penalty.

## III. ANALYSIS

### A. Trial Issues

#### 1. Admission of Gruesome Photographs of Victim

■ Rienhardt argues that the trial court erred in admitting photographs of the victim's injuries. While Rienhardt does not specify which photographs he finds objectionable, the record contains two graphic photographs of the victim's injuries. State's Exhibit 58 shows Ellis's head and torso at the medical examiner's office. State's Exhibit 61 shows Ellis's right hand severely wounded by a shotgun blast. Rienhardt argues that the photographs were not relevant, because he did not dispute the cause of death at trial. He also argues that the photographs served only to inflame the passions of the jury. We disagree.

■ Inflammatory photographs are admissible if they are relevant and their probative value outweighs the danger of unfair prejudice. *State v. Thornton,* 187 Ariz. 325, 332, 929 P.2d 676, 683 (1996), *cert. denied,* — U.S. —, 117 S.Ct. 1706, 137 L.Ed.2d 831 (1997). The trial court's ruling on the admissibility of photographs will not be overturned on appeal absent an abuse of discretion. *State v. Gulbrandson,* 184 Ariz. 46, 60, 906 P.2d 579, 593 (1995), *cert. denied,* — U.S. —, 116 S.Ct. 2558, 135 L.Ed.2d 1076 (1996).

#### a. Relevance

■ Notwithstanding an offer to stipulate to the cause of death, photographs of a murder victim are relevant if they help to illustrate what occurred. *Gulbrandson,* 184 Ariz. at 60, 906 P.2d at 593. Here, the state sought to corroborate the testimony of its key witness, Christina George. George testified that she encountered Rienhardt on a dirt road close to the murder scene, that Rienhardt retrieved a shotgun, and that Rienhardt told her they had dropped a rock on the victim's head because the victim had not died from shotgun wounds. At a minimum, the photographs serve to corroborate this testimony, and are therefore highly relevant.

#### b. Unfair Prejudice

While gruesome, these two photographs certainly do not qualify as cumulative. Each photograph conveys different, highly relevant information about the crime. They are fair representations of what happened here, and thus cannot be said to be unfairly prejudicial. There is nothing sanitary about murder, and there is nothing in Rule 403, Ariz. R. Evid., that requires a trial judge to make it so. The trial court did not abuse its discretion.

#### 2. Due Process Violation: Late Disclosure and Non-Disclosure of the Rienhardt/George Letters

During her direct examination of Christina George, the prosecutor asked George about a group of letters that George and Rienhardt had written to one another in jail after their arrests. The prosecutor elicited testimony as to one letter in particular, written by Rienhardt in November, 1995, in which he urged George to change her story on his behalf. George had apparently never turned this particular letter over to the prosecution, but instead had given it to her own lawyer. During redirect examination, the prosecutor informed the court that George's lawyer was in the hallway outside of the courtroom. The court instructed the prosecutor to obtain the letter from the lawyer, but the lawyer did not have it with him. He gave the letter to the prosecutor a few days later.

Rienhardt's counsel moved to exclude the letter under Rule 15, Ariz. R.Crim. P., and for a deposition of George's lawyer along with disclosure of all undisclosed letters in the prosecution's possession. The court precluded the state from using the letter in its

case in chief, but also ruled that the letter would be admitted if the defense presented any alibi evidence or any other evidence that contradicted the letter's contents. The record contains no ruling on the defense's motion for a deposition or disclosure of any other letters. It is not clear whether Rienhardt withdrew this part of the motion, or whether the court simply did not rule on it. Rienhardt's original motion was phrased in the alternative: he requested *either* exclusion of the letter *or* an opportunity to examine the other letters and depose George's lawyer. Tr. of Feb. 21, 1996 at 4. After both sides had rested, Rienhardt's lawyer told the court that he and Rienhardt had discussed the matter, and that the potential admission of the letter played a role in Rienhardt's decision not to testify or call two alibi witnesses. The letter was never admitted into evidence.

Rienhardt argues that the state violated Rule 15.1, Ariz. R.Crim. P., by failing to exercise "due diligence" to obtain copies of all relevant letters and disclose them to the defense. Rienhardt further argues that the prosecution's questioning of George during direct examination reveals the prosecution's knowledge of the existence and content of the November letter. Rienhardt argues that this was prejudicial because the defense was not able to adequately prepare for cross-examination of Christina George. The state argues that Rienhardt has not demonstrated any prejudice as a result of George's testimony regarding the letter, but does not address Rienhardt's argument regarding the remaining, undisclosed letters.

Arizona Rule of Criminal Procedure 15.1(a) provides:

No later than 10 days after the arraignment in Superior Court ... the prosecutor shall make available to the defendant for examination and reproduction the following material and information except as provided by Rule 39(b) *within the prosecutor's possession or control:*

(1) The names and addresses of all persons whom the prosecutor will call as witnesses in the case-in-chief together with their relevant written or recorded statements;

(2) *All statements of the defendant and of any person who will be tried with the defendant;*

. . .

(4) A list of all papers, documents, photographs or tangible objects which the prosecutor will use at trial or which were obtained from or purportedly belong to the defendant;

(emphasis added). Rule 15.6 provides for a continuing duty to disclose. Finally, Rule 15.7 provides sanctions for violation of these rules.

The trial court did apparently find that the prosecution violated Rule 15.1, because it excluded the November letter. The remaining questions, then, are (1) whether nondisclosure of the other letters violated Rule 15.1, and, if so, (2) whether, under Rule 15.7, the trial court abused its discretion by not granting the defense's motion for disclosure of all the letters and a recess to review the letters to better prepare for cross-examination.

### a. Disclosure Violation

■ The ultimate question is whether these letters, while not in the prosecutor's possession, were within her control. Under Rule 15.1(d), the prosecutor's duty to obtain material extends to information in the possession or control of members of her staff and of any other persons who have participated in the investigation or evaluation of the case and who are under the prosecutor's control. We have held that a witness's cooperation does not render her an agent of the prosecutor's office. *State v. Kevil*, 111 Ariz. 240, 243, 527 P.2d 285, 288 (1974). Nor does the fact that the prosecution is in a better position to secure a witness's cooperation mean that the witness is under the prosecution's control. *See State v. Briggs*, 112 Ariz. 379, 383, 542 P.2d 804, 808 (1975) (holding that FBI materials were not within the "control" of the prosecutor). Finally, we have held that the state has an obligation under Rule 15.1 to disclose material information not in its possession or under its control only if (1) the state has better access to the information; (2) the defense shows that it has made

a good faith effort to obtain the information without success; and (3) the information has been specifically requested by the defendant. *State v. Smith,* 123 Ariz. 231, 239, 599 P.2d 187, 195 (1979).

It appears that these undisclosed letters were in the possession of George and George's lawyer. There is evidence to suggest that the prosecutor was able to procure the letters from George when she needed them. However, it is doubtful she had the sort of control outlined in the cases above. George was not just a witness, but a person charged with a crime, represented by counsel, and therefore an adversary. At the same time, these were Rienhardt's letters. He was aware of their existence, and could have obtained them just as easily as could have the state. On this record, we cannot say that a violation of the rule took place. However, even if a violation did take place, the trial court's choice of sanction does not constitute prejudicial error.

### b. Prejudicial Error

■ The underlying principle of our disclosure rules is the avoidance of undue delay or surprise. *State v. Stewart,* 139 Ariz. 50, 59, 676 P.2d 1108, 1117 (1984). The choice of sanction is within the discretion of the trial court, and will not be reversed on appeal absent a showing of prejudice. *State v. Durham,* 111 Ariz. 19, 22, 523 P.2d 47, 50 (1974). For error to be harmless, and therefore not prejudicial, this court must be able to say beyond a reasonable doubt that the error did not contribute to or affect the verdict. *State v. Krone,* 182 Ariz. 319, 321, 897 P.2d 621, 623 (1995).

■ Rienhardt subjected George to withering cross-examination. Rienhardt was able to clearly demonstrate that George's story had changed after her plea agreement. Rienhardt's ability to effectively cross-examine George was not hampered. Furthermore, the letters had all been written by Rienhardt himself, and it is difficult to see (1) how Rienhardt's statements would be useful in attacking George's credibility, and (2) how Rienhardt could be surprised at trial by his own letters. While Rienhardt argues that it is impossible for him to provide this court

with a specific account of the prejudice he suffered because the letters are not a part of the record, it is Rienhardt himself who wrote the letters, and he should therefore be able to present at least a single example of the prejudice he suffered. He has failed to do so.

Finally, and most importantly, any error would have been harmless beyond a reasonable doubt. Rienhardt's conviction is supported by overwhelming evidence of his guilt. He was caught almost literally "red-handed" by an alert police officer shortly after the murder. Further cross-examination of Christina George with respect to his own letters could not have altered the jury's verdict. *See State v. Kemp,* 185 Ariz. 52, 59, 912 P.2d 1281, 1288 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 117, 136 L.Ed.2d 68 (1996).

### 3. Due Process Violation: Admission of Evidence of Defense Counsel's Interview with Christina George

During trial, the prosecution learned that Christina George had spoken with Rienhardt's lawyer not long after George and Rienhardt were arrested, and that the conversation was not recorded. George apparently told Rienhardt's lawyer that Rienhardt had killed Michael Ellis, but that she would be willing to change her story to help him. George made subsequent statements to police implicating Rienhardt's co-defendant, Charles Nadeau, as the only responsible party. After she pled guilty, however, George pointed the finger back to Rienhardt. This inconsistency was not lost on the defense, and her contradictory statements were used during cross-examination. Rienhardt created a strong inference that George had fabricated her story in exchange for leniency.

Before any examination of Christina George, the prosecutor stated her intent to use the unrecorded conversation as evidence of a prior consistent statement in the face of the defense's charge of recent fabrication. The prosecutor further pointed out that Rienhardt's lawyer had rendered himself a witness by not recording this conversation. The prosecutor moved for mistrial, which the court denied. Instead, the court's solution

was to allow the prosecutor to elicit testimony about the conversation on redirect if Rienhardt's lawyer opened the door to such testimony by implying recent fabrication. Rienhardt's lawyer did not object, but instead cross-examined George in a way that he apparently believed would not open the door. However, Rienhardt's cross-examination did open the door, and the prosecutor was permitted to elicit testimony about the unrecorded meeting on redirect examination. On re-cross, which the trial court allowed, Rienhardt did not examine George on the prior statement.

■■■■■ Rienhardt first argues that the trial court's resolution of this situation denied him his constitutional right to confront George, his due process rights, and his right to counsel. Specifically, Rienhardt argues that he was "entitled to inquire into the fact that Christina George changed her account of events in these free talks and in her presentence interview with the probation officer. He also had a right to point out that, on occasion, Christina embellished her story when it suited her interests." Appellant's Opening Br. at 24. Rienhardt ignores the fact that all of these inconsistencies were, unlike *State v. Briley*, 106 Ariz. 397, 476 P.2d 852 (1970), brought to light during the defense's cross-examination of George, and were indeed the very reason that the prosecution was permitted to introduce a prior consistent statement on redirect. There is no right to, nor should a court permit, the use of recross-examination to repeat or reemphasize matters already covered on cross-examination. *State v. Smith*, 138 Ariz. 79, 81, 673 P.2d 17, 19 (1983); *State v. Loftis*, 89 Ariz. 403, 405–06, 363 P.2d 585, 587 (1961). Moreover, it seems clear that counsel's decision not to cross-examine George and force a mistrial was a strategic one. Rienhardt's counsel could have moved for a mistrial at any time, but chose instead to impeach George with many prior inconsistent statements, which opened the door to use of prior consistent statements. Rienhardt was not denied his right to confront George.

■■■■■ Rienhardt next argues that George's testimony should have been excluded under Rule 403, Ariz. R. Evid., because it "cast aspersions against defense counsel." We do not see the factual predicate for this argument, but even if evidence is inflammatory, it is admissible if there is a legitimate, rehabilitative purpose that outweighs the prejudicial effect. *State v. Ortiz*, 131 Ariz. 195, 204, 639 P.2d 1020, 1029 (1981). Thus even if we were to accept Rienhardt's assessment of the testimony's prejudicial effect, the testimony's legitimate, rehabilitative purpose outweighed this effect.

■■■■■ Finally, Rienhardt argues that the testimony was not relevant to rebut a charge of recent fabrication under Rules 402 and 608, Ariz. R. Evid. The Rule 402 argument appears to be that the testimony is not relevant because it did not make Christina George's testimony more likely true. However, a prior consistent statement properly admitted under Rule 801(d)(1)(B), Ariz. R. Evid., is, by definition, relevant under Rule 401. Similarly, Rule 608 was not violated, because, among other reasons, George's prior consistent statement was probative of her truthfulness. The testimony was properly admitted.

### 4. Authentication of Rienhardt's Voice

■■■■■ Rienhardt next argues that the trial court erred in allowing Micki Rowlan, James Breedlove's girlfriend, to testify about a telephone conversation she had on the night of the murder with a male caller whom she believed to be Rienhardt. According to Rowlan's testimony, the caller said, among other things, that (1) he hated all women; (2) that he wanted Breedlove to return with his money; (3) that if Breedlove did not return, he would take Ellis on a hike in the desert, blindfold him, hang him over the edge of a cliff, take the blindfold off, and drop him; and (4) that he would be coming over to Rowlan's home with a gun. Rienhardt argues that the statements do not qualify as an admission by a party opponent, because Rowlan could not properly identify the speaker as Rienhardt, and that the statements are therefore hearsay. It is undisputed that Rowlan had never heard Rienhardt's voice prior to the conversation at issue.

The trial court initially ruled that the statements were inadmissable hearsay, then reversed itself after reviewing four cases submitted by the prosecution: *Cavanagh v. Ohio Farmers Ins. Co.*, 20 Ariz.App. 38, 509 P.2d 1075 (1973); *State v. Philips*, 108 Wash.2d 627, 741 P.2d 24 (1987); *State v. Danielson*, 37 Wash.App. 469, 681 P.2d 260 (1984); *State v. Elie*, 4 Wash.App. 352, 481 P.2d 464 (1971). · All of these cases stand for the general proposition that the identity of a speaker on a telephone may be established by circumstantial evidence. Rienhardt argues that all of these cases are distinguishable, however, because in these cases the caller, whose voice was unknown to the witness testifying in court, identified himself or herself by name at some point during the conversation. It is undisputed that the man with whom Rowlan spoke did not identify himself by name.

■ We have held that circumstantial evidence may be used to prove the authenticity of a sound recording. *State v. Lavers*, 168 Ariz. 376, 388 n. 8, 814 P.2d 333, 345 n. 8 (1991). Rule 901(b)(6), Ariz. R. Evid., provides that telephone conversations may be authenticated by evidence that a call was made to a person to whom a number is assigned and that *"circumstances*, including self identification, show the person answering to be the one called." (emphasis added). Even where, as here, there is no evidence of the particular number of the person called, Rule 901(b)(4) allows a party to establish the identity of a speaker on a telephone by circumstantial evidence. Rule 901 provides:

(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding · that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

. . .

(4) Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

The speaker need not identify himself by name.

The following circumstantial evidence was presented at trial: (1) Theresa Martinez testified that while she was in the apartment with Rienhardt and Ellis, she heard Rienhardt say, over the telephone, that he hated all women; (2) James Breedlove testified that during his telephone conversation with Rienhardt, Rienhardt told him that he was going to take Ellis for a hike; (3) Andrea Nadeau, present in the apartment with Ellis and Rienhardt, testified that Rienhardt was agitated and yelling into the telephone on two occasions; (4) Breedlove was in possession of Rienhardt's $1,180; and (5) Rienhardt was in possession of two shotguns during the evening in question.

This is adequate circumstantial evidence that the person with whom Micki Rowlan spoke was in fact Rienhardt. The caller threatened to take Ellis on a hike, just as Rienhardt had. The caller stated that he hated women, just as Rienhardt had. The caller stated that he had a gun, as only Rienhardt did. Finally, the caller stated that he wanted his money back, and the undisputed evidence was that only Rienhardt's money was at stake in the drug deal. The out of court statements Rowlan recounted are therefore not hearsay, but rather admissions by a party opponent under Rule 801(d)(2), Ariz. R. Evid.

### 5. Sufficiency of Evidence With Respect to Count Five: Attempted Arson of a Structure

■ Evidence is sufficient if there is substantial evidence to support the guilty verdict. *State v. Mincey*, 141 Ariz. 425, 432, 687 P.2d 1180, 1187 (1984). Put differently, the question is whether there was sufficient evidence so that a rational trier of fact could have found guilt beyond a reasonable doubt. *Id.* In reviewing sufficiency of the evidence, we examine the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the

defendant. *State v. Gallegos*, 178 Ariz. 1, 9, 870 P.2d 1097, 1115 (1994).

■ Rienhardt argues that the testimony at trial established only that Christina George and Charles Nadeau took steps toward burning the Buick while Rienhardt stood some distance away talking on a pay phone. The state argues that Rienhardt's conduct before, during, and after the attempted arson of the vehicle by George and Nadeau rendered him an accomplice under A.R.S. § 13–301. The ultimate issue, then, is whether a rational trier of fact could have found beyond a reasonable doubt that Rienhardt solicited, commanded, aided, counseled, agreed to aid, or attempted to aid George and Nadeau in attempting to burn the vehicle, or provided them with a means or opportunity to commit the offense.

George testified that while she and Nadeau hatched the plan to burn the car, Rienhardt called Anginette Ortiz, the owner of the Buick, said that he was sorry, and that he would buy her a new car. One inference to be drawn from this testimony is that Rienhardt was part of a plan to burn the car. Although another inference is that Rienhardt was talking to Ortiz about the extensive damage the vehicle had sustained at Reddington Pass, the jury was entitled to reach the former inference. Additional testimony with respect to what happened in the parking lot came from an eyewitness in a nearby donut shop. He testified that he saw only two people around the Buick during the time in question: a woman, undoubtedly George, and a large man with very short hair, undoubtedly Nadeau. The sheriff's deputy who came upon the group testified that three people were standing around the vehicles just before fleeing in the black Toyota MR–2.

While the state did not present very strong evidence against Rienhardt with respect to the attempted arson count, a reasonable inference to be drawn from the evidence is that Rienhardt was an accomplice to the attempted burning of the Buick. Rienhardt was present, or very nearby, during the commission of the offense, had a very strong interest in the destruction of evidence contained in the Buick, and was the party responsible for the vehicle that evening. The evidence was sufficient to support the verdict.

## B. Sentencing Issues

### 1. Enmund/Tison Finding

Rienhardt first contends that the state has not met its burden in felony murder cases of proving that the defendant himself killed, attempted to kill, or planned to kill pursuant to *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). This contention is without merit, because all twelve jurors found Rienhardt guilty of first degree murder under both a premeditation theory and a felony murder theory. In addition, the trial judge found that Rienhardt was a major participant in the killing of Michael Ellis and that his actions demonstrated a reckless indifference for human life. These findings are plainly supported by the evidence.

### 2. Prior Conviction of a Serious Offense: 13–703(F)(2)

The trial court found beyond a reasonable doubt that Rienhardt had previously been convicted of a "crime of violence," and that the (F)(2) aggravator was therefore present. Rienhardt does not challenge this finding. We note that the trial court incorrectly applied the older (F)(2) factor requiring a finding of a "crime of violence." In 1993, the legislature amended A.R.S. § 13–703(F)(2) to apply to prior convictions for a "serious offense," rather than a prior conviction for a felony involving the use or threat of violence. Because Rienhardt committed the murder in 1995, the trial court should have determined whether Rienhardt's prior conviction for aggravated assault constituted a "serious offense" under the new (F)(2). We find that the (F)(2) aggravator exists, because the state proved beyond a reasonable doubt that Rienhardt had previously been convicted of a "serious offense" as defined under A.R.S. § 13–703(H)(4): aggravated assault committed by the use, threatened use or exhibition of a deadly weapon or dangerous instrument.

### 3. Especially Heinous, Cruel, or Depraved: 13–703(F)(6)

#### a. Cruelty

A crime is committed in an especially cruel manner when the perpetrator inflicts mental anguish or physical abuse before the victim's death. *State v. Walton*, 159 Ariz. 571, 586, 769 P.2d 1017, 1032 (1989). Mental anguish includes a victim's uncertainty as to his ultimate fate. *Id.*

The trial court made the following findings with respect to cruelty: (1) Ellis was beaten in the apartment prior to being taken to Reddington Pass, as evidenced by the blood found at the apartment, along with pieces of teeth; (2) Ellis feared for his life as evidenced by his panicked statement to Micki Rowland, in which he frantically requested the return of James Breedlove to the apartment, and told her that he was bleeding; (3) Ellis was taken on a twenty minute car ride to Reddington Pass, after having heard Rienhardt threaten to take him to the desert and kill him; (4) Ellis had a defensive wound on his thumb and wrist caused by a shotgun blast, demonstrating that Ellis was standing when he was shot and had vainly held his hand up to try to protect himself; (5) Ellis was alive during the severe beating, and was alive during the beating to his head, as evidenced by the aspiration of blood into his lungs; and (6) Ellis, while still alive, had large rocks dropped onto his head, which severely crushed his skull.

We believe, as the trial court put it, that Michael Ellis suffered "tremendously" before his death. This suffering was both physical and mental. Rienhardt took Ellis hostage, threatened him, beat him savagely, and, as he had promised, took him on a drive to the desert and killed him. There can be no doubt that Ellis suffered extreme mental anguish with respect to his ultimate fate. The evidence is more than sufficient for a finding of cruelty beyond a reasonable doubt.

#### b. Heinousness or Depravity

Heinousness or depravity focuses on the defendant's mental state and attitude as evidenced by his actions. Under *State v. Gretzler*, 135 Ariz. 42, 659 P.2d 1 (1983) and *State v. Stanley*, 167 Ariz. 519, 809 P.2d 944 (1991), we may consider six factors in determining whether a murder was especially heinous or depraved. The trial court found four of these factors present: senselessness of the killing, helplessness of the victim, relishing of the act, and gratuitous violence. We will address only one of these factors, gratuitous violence, because gratuitous violence alone may demonstrate a heinous or depraved state of mind. *State v. Lee (II)*, 189 Ariz. 608, 619, 944 P.2d 1222, 1233 (1997).

The trial court found that the severe beating inflicted upon Ellis, combined with the dropping of two boulders on his head after the delivery of a fatal shotgun blast, amounted to gratuitous violence. We will find gratuitous violence when a defendant uses additional violence beyond that necessary to kill. *State v. Amaya–Ruiz*, 166 Ariz. 152, 178, 800 P.2d 1260, 1286 (1990). Rienhardt argues (1) that this evidence does not support a finding of violence beyond the murderous act itself, and (2) that the dropping of one or two boulders cannot qualify as gratuitous, because this action lessened the victim's suffering.

We find that the severe beating of Ellis at the murder scene with the butt end of a shotgun, the infliction of a close-range shotgun wound, and the dropping of at least one boulder on Ellis's head qualifies as additional violence beyond that necessary to kill. The rage inflicted upon Ellis was shockingly evil. *See State v. Wallace*, 160 Ariz. 424, 427, 773 P.2d 983, 986 (1989) (severe beating with a pipe wrench, sufficient to fracture the victim's skull, nose, and jaw, qualified as gratuitous violence when less violent means of killing available) and *State v. Harding*, 137 Ariz. 278, 294–95, 670 P.2d 383, 399–400 (1983) (finding that the savage beating of the victim, regardless of its timing, reflected a depraved mental state). The evidence is sufficient to support a finding, beyond a reasonable doubt, of an especially heinous or depraved state of mind.

### 4. Pecuniary Gain: 13–703(F)(5)

This aggravating factor is present when, "[t]he defendant committed the offense

as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." A.R.S. § 13–703(F)(5). The trial court found this factor present because the killing of Ellis took place in the context of a drug deal gone awry. Rienhardt murdered Ellis because Breedlove had not returned with either methamphetamines or Rienhardt's $1,180. Rienhardt argues that the trial court's finding of this aggravating factor is illogical, because the killing of Michael Ellis could not possibly have brought any type of pecuniary gain. In response, the state points to *State v. LaGrand (Walter)*, 153 Ariz. 21, 734 P.2d 563 (1987), a case in which the defendant fatally stabbed a bank employee who had kicked the defendant in the leg during the defendant's exit from the bank. In finding that the aggravating factor of pecuniary gain was present, we stated that "[w]hen the defendant comes to rob, the defendant expects pecuniary gain and this desire infects all other conduct of the defendant." *Id.* at 35, 734 P.2d at 577. The state reasons that Rienhardt's desire to receive either drugs or the return of his money infected all of his other conduct, and that the aggravating factor of pecuniary gain is therefore present.

We do not believe that Rienhardt killed in the expectation of receipt of anything of pecuniary value. His very reason for killing Ellis was that he was not going to receive anything of pecuniary value. While it is certainly possible that Rienhardt killed Ellis in order to frighten Breedlove into returning the drugs or the money, the state did not prove this beyond a reasonable doubt. It is equally, if not more, plausible that Rienhardt killed Ellis in an act of rage, out of frustration at being cheated. This court has held that murder motivated by revenge alone will not support a finding of this factor, and that the hope of financial gain must supply an impetus for the murder. *State v. Robinson*, 165 Ariz. 51, 60, 796 P.2d 853, 862 (1990).

We think that *State v. LaGrand* is distinguishable. In *LaGrand*, the defendant came to rob, and killed the employee during the robbery itself. Here, while Rienhardt held his human collateral hostage in expectation of the receipt of something of pecuniary val-

ue, his decision to take Ellis to the desert and kill him signified the end of his expectation of receipt of anything of pecuniary value, because killing Ellis frustrated this purpose. The killing was also removed in time and place from the underlying drug deal that was supposed to have happened hours earlier at the Benz apartment. Unlike *LaGrand*, this is not a case in which the defendant came to rob, expected pecuniary gain, and this affected all other conduct of the defendant. Here, the defendant came to buy drugs, not to steal, and he killed because the seller tricked him. As awful as this is, Rienhardt did not kill "as consideration for the receipt, or in expectation of the receipt, of anything of pecuniary value." A.R.S. § 13–703(F)(5).

#### 5. Mitigation

Rienhardt expressly refused to present any mitigating evidence. In anticipation of Rienhardt's appeal to this court, the trial court conducted an independent review of the evidence for statutory and nonstatutory mitigating factors.

#### a. Statutory Mitigation

■ The trial court did not find any statutory mitigating factors. The court considered whether or not Rienhardt's alcohol consumption during the evening in question significantly impaired his capacity to appreciate the wrongfulness of his conduct under A.R.S. § 13–703(G)(1), and concluded that Rienhardt was able to appreciate the wrongfulness of his conduct. Specifically, the court found that Rienhardt, upon his arrest, gave an alias to police officers and later attempted to wash blood from his clothing, indicating that he appreciated the wrongfulness of his actions. The court went on to find that even if this mitigating factor had been proven, it would not have been sufficient to outweigh any of the aggravating factors present. The court further found that drugs were not a statutory mitigating circumstance.

We have frequently found that a defendant's claim of alcohol or drug impairment fails when there is evidence that the defendant took steps to avoid prosecution shortly after the murder, or when it appears that

intoxication did not overwhelm the defendant's ability to control his physical behavior. *See State v. Miller,* 186 Ariz. 314, 326, 921 P.2d 1151, 1163 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1088, 137 L.Ed.2d 221 (1997); *State v. Jones,* 185 Ariz. 471, 489, 917 P.2d 200, 218 (1996); *State v. Medrano,* 185 Ariz. 192, 194, 914 P.2d 225, 227 (1996). Here, there is evidence that Rienhardt had consumed some alcohol on the night of the murders. There is no evidence providing even a rough estimate of his level of intoxication. But the evidence showed that Rienhardt not only took steps to avoid prosecution, but also transported his victim to a remote location, dislodged his stuck vehicle from a rock, summoned Christina George to his aid, and placed a phone call to the owner of the broken vehicle in order to apologize for the damage done. We agree with the trial court that this factor does not exist.

█ On appeal, Rienhardt argues that the trial court should not only have considered his intoxication, but also the fact that he was under a great deal of stress at the time of the killing (because he was worrying about his money), and that he had been up all night without sleep. There is nothing in the record to support this argument, but even if true, this would not be mitigating.

### b. Non-Statutory Mitigation

█ The trial court considered the following non-statutory mitigators, and found that none, taken either individually or collectively, were sufficient to overcome the aggravating factors in this case: alcohol consumption, past drug use, family support, and employment history.

### i. Alcohol Consumption and Past Drug Use

█ In *State v. Jones, supra,* this court gave "some weight" to evidence of the defendant's history of alcoholism and drug abuse, and defendant's self-reporting that on the night of the murder he had not slept for three or four days and was under the influence of methamphetamines and alcohol, but concluded that these facts were not sufficient for leniency. *Id.* at 491, 917 P.2d at 220. Here, the only evidence of this kind found by

the trial court in its independent review was that Rienhardt had alcohol on his breath at the time of his arrest, and that Rienhardt told his probation officer that he had a drinking problem at the time the murder took place.

A review of the record reveals substantial additional evidence of a history of drug and alcohol abuse. However, this court has rejected past drug and alcohol use as a mitigating circumstance calling for leniency when there is no evidence of a causal connection between the substance abuse and the crime. *See State v. Henry,* 189 Ariz. 542, 552–553, 944 P.2d 57, 67–68 (1997). Here, there is no evidence connecting Rienhardt's history to the crime itself. Since Rienhardt declined to present any evidence of a causal connection at his aggravation-mitigation hearing, we reject this mitigating factor. In addition, given the weight of the aggravating factors in this case, proof of a causal connection would not have been sufficient to warrant leniency.

### ii. Family Support

The trial court also considered the fact that Rienhardt's family appeared to care about his future during the proceedings, and that Rienhardt has a young son. The trial court apparently found that this mitigating factor existed, but that it was insufficient to overcome one or more of the aggravating factors present. We agree with the trial court that this evidence was insufficient to overcome one or more aggravating factors in this case. *See State v. Williams,* 183 Ariz. 368, 385, 904 P.2d 437, 454 (1995); *State v. West,* 176 Ariz. 432, 451, 862 P.2d 192, 211 (1993); *State v. Bible,* 175 Ariz. 549, 606, 858 P.2d 1152, 1209 (1993).

### iii. Employment History

Finally, the trial court considered the fact that Rienhardt had some history of employment as a mason prior to the offense. The court found this history, though possibly mitigating, to be insufficient to overcome one or more aggravating factors in this case because Rienhardt was also dealing drugs during his employment. We agree that this factor, even

if it exists, is not sufficient to outweigh the aggravating factors present in this case.

#### iv. Additional Arguments

On appeal, Rienhardt's counsel submits two additional mitigating factors: (1) Rienhardt is intelligent, and (2) Rienhardt is capable of being rehabilitated. We reject both of these factors.

### 6. Reweighing

Having found that the (F)(5) factor does not exist, we independently reweigh. We have examined all the aggravating circumstances and what little, if any, mitigating evidence that exists and find that no mitigating evidence is sufficiently substantial to call for leniency. On independent review, we affirm the sentence of death. A.R.S. § 13–703.01.

## IV. CONCLUSION

We affirm all convictions and sentences.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN and MOELLER, JJ., concur.