NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RAY EUGENE RIVERA, *Appellant.*

No. 1 CA-CR 13-0886
FILED 4-21-2015

Appeal from the Superior Court in Maricopa County
No. CR2012-006669-001
The Honorable John R. Ditsworth, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Michael J. Brown joined.

---

**T H U M M A**, Judge:

¶1        This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for defendant Ray Eugene Rivera has advised the court that, after searching the entire record, she has found no arguable question of law and asks this court to conduct an *Anders* review of the record. Rivera was given the opportunity to file a supplemental brief pro se, and has done so. This court has reviewed the record and has found no reversible error. Accordingly, Rivera's conviction and resulting sentence are affirmed as modified.

**FACTS[1] AND PROCEDURAL HISTORY**

¶2        In March 2012, Rivera was charged by Indictment with first degree murder, a Class 1 dangerous felony (Count 1) or in the alternative second degree murder, a Class 1 dangerous felony (Count 2); attempted robbery, a Class 5 felony (Count 3); burglary in the third degree, a Class 4 felony (Count 4) and theft, a Class 6 felony (Count 5).

¶3        At trial, the state presented testimony from 15 witnesses, DNA evidence and exhibits. The evidence showed that Phoenix police officers responded to a call at a store on the morning of June 9, 1998. When officers arrived, they found a man, later identified as H.R., lying behind the counter of the store.[2] H.R. had bruises and abrasions on his body, had suffered a fatal gunshot wound to the chest and had apparently been bitten on his ear and shoulder. Police found the missing piece of the victim's ear

---

[1] This court views the facts "in the light most favorable to sustaining the verdict, and resolve[s] all reasonable inferences against the defendant." *State v. Rienhardt*, 190 Ariz. 579, 588–89, 951 P.2d 454, 463–64 (1997) (citation omitted).

[2] Initials are used to protect the victims' and witness' privacy. *See State v. Malonado*, 206 Ariz. 339, 341 n.1 ¶ 2, 78 P.3d 1060, 1062 n.1 (App. 2003).

behind the counter. A bullet casing and a water bottle with a broken seal were found in the area. Subsequent analysis showed the bullet casing could have been fired from the type of gun that H.R. owned. No gun was found.

**¶4** Although there were no witnesses, the police viewed a surveillance video from security cameras at the store. The video showed a man with a water bottle enter the store, interact with H.R. and then leave. Several minutes later, the man returned, got behind the counter and fought with H.R. (who possessed a gun). Officers who watched the video commented on a round tattoo located above the man's right hand.

**¶5** The State's witnesses testified that the use of DNA for criminal investigation was in its infancy in 1998. Samples were, however, collected from the scene to preserve possible DNA evidence. In May 2009, a detective reviewing the case determined that further testing was appropriate to see if any DNA could be found on the victim's shirt, the water bottle found at the scene and a swab taken from the victim's ear. The detective asked that any DNA profiles revealed from the testing be entered into the national Combined DNA Index System (CODIS) database. Testimony indicated that the partial DNA profile from the swab of the victim's ear matched the partial DNA profile from the water bottle.

**¶6** In March 2012, the case was assigned to another detective who learned that information from the CODIS database identified Rivera as a possible suspect. This detective compared a July 18, 1998 photograph of Rivera to the man in the surveillance footage and noted certain similarities. In April 2012, two detectives went to California, where Rivera was thought to be living. The detectives interviewed Rivera and testified to several of Rivera's distinguishing tattoos, one of which appeared visible on the June 9, 1998 surveillance footage.

**¶7** During the interview, Rivera admitted to using heroin and shoplifting in order to buy drugs in the past. Although admitting to working in Arizona at various times, Rivera denied being in Arizona in early June 1998 and denied ever being at the market. The detectives ultimately arrested Rivera in California on these Arizona charges and he was then extradited to Arizona. Buccal swabs were later taken from Rivera for DNA comparison purposes.

**¶8** A series of photographs of Rivera were taken in September 2012, showing his tattoos were similar to those in the 1998 photos. During trial, Rivera complied with a request to display a tattoo on his wrist for the jury. A forensic scientist testified that the partial DNA taken from the water

bottle and H.R.'s ear matched Rivera's DNA profile and gave statistics regarding the "proximate incidence in this profile or this type of match."

¶9         L.C., who had been in custody with Rivera leading up to the trial, testified pursuant to a testimonial agreement. L.C. stated that Rivera bragged to him about how he was going to beat the charges against him because the surveillance footage was choppy. L.C. stated that Rivera claimed to be "drug sick" from heroin withdrawal during the relevant time in June 1998 and needed money. Rivera told L.C. that the victim was an older "chump" who he thought would be an easy target. However, when Rivera demanded money, H.R. insulted him and began to reach under the counter; in response, Rivera jumped over the counter. L.C. testified that Rivera said he was able to grab H.R.'s hand to keep him from firing a gun and that he was able to turn the weapon toward H.R., squeeze H.R.'s hand and fire the bullet that killed H.R. L.C. testified that Rivera told him he sold the gun for drug money.

¶10         The jury found Rivera guilty on all charges; found the first degree murder offense was a dangerous offense and made aggravating factor findings on some of the other offenses. The superior court sentenced Rivera to life in prison, with no possibility of release until 25 calendar years were served, for first degree murder (Count 1) and dismissed the second degree murder charge (Count 2). The court imposed prison terms for the other convictions, concurrent to the sentence on Count 1.

¶11         After sentencing, by stipulation, Rivera's convictions and resulting sentences for all convictions other than first degree murder were set aside because the statute of limitations for those convictions had expired before trial. This court has jurisdiction over Rivera's timely appeal from his first degree murder conviction and resulting sentence pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(1), 13-4031, and -4033(A)(1) (2015).[3]

---

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

## DISCUSSION

**¶12**         This court has reviewed and considered counsel's brief and Rivera's pro se supplemental brief, and has searched the entire record for reversible error. *See State v. Clark*, 196 Ariz. 530, 537 ¶ 30, 2 P.3d 89, 96 (App. 1999). Searching the record and briefs reveals no reversible error. The record shows that Rivera was represented by counsel at all stages of the proceedings and counsel was present at all critical stages. The evidence admitted at trial constitutes substantial evidence supporting Rivera's conviction for first degree murder. From the record, all proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. The sentence imposed was within the statutory limits and permissible range. The court's review of the record reveals three issues that merit further discussion.

**¶13**         First, the photographs of Rivera admitted at trial without objection showing his tattoos were taken while he was in jail clothes. Identity was an important issue in this case and Rivera's multiple tattoos were key in identifying him as the suspect in the surveillance tape. Thus, the photographs showing his tattoos (including where Rivera is wearing jail clothing) were important to help the jury identify the suspect in the 1998 surveillance footage as being Rivera. Furthermore, given L.C.'s testimony, the jury was aware that Rivera had been in custody for these charges and thus it cannot be said the photographs were unfairly prejudicial. *See State v. Murray*, 184 Ariz. 9, 35, 906 P.2d 542, 568 (1995) (finding no prejudice where jury learned defendants were arrested and spent time in custody before trial). The photographs do not show Rivera in any restraints. Moreover, the evidence was that these photographs were taken after Rivera was charged with the current offense, and therefore did not suggest that he had been in custody previously. Accordingly, the admission of these photographs was not error, let alone fundamental error resulting in prejudice. *See State v. Henderson*, 210 Ariz. 561, 567 ¶¶ 19–20, 115 P.3d 601, 607 (2005).

**¶14**         Second, Rivera's pro se supplemental brief argues ineffective assistance of trial counsel. Such a claim, however, can only be raised in post-conviction proceedings and not on direct appeal. *State ex rel Thomas v. Rayes*, 214 Ariz. 411, 415 ¶ 20, 153 P.3d 1040, 1044 (2007).

**¶15**         Finally, Rivera was given 540 days of presentence incarceration credit. However, he was arrested in California for the murder charge here on April 4, 2012 and extradited to Arizona on April 19, 2012 and held in custody continuously. After being given a continuance, he was sentenced on November 15, 2013. Therefore, Rivera is entitled to 590 days

of presentence incarceration credit, reflecting the time from his arrest in California to his sentencing, and the judgment is modified accordingly. *See* A.R.S. § 13-712(B).

## CONCLUSION

**¶16**       This court has read and considered counsel's brief and Rivera's pro se supplemental brief, and has searched the record provided for reversible error and has found none. *State v. Leon*, 104 Ariz. 297, 300, 451 P.2d 878, 881 (1969); *State v. Clark*, 196 Ariz. 530, 537 ¶ 30, 2 P.3d 89, 96 (App. 1999). Accordingly, Rivera's conviction and resulting sentence are affirmed as modified.

**¶17**       Upon filing of this decision, defense counsel is directed to inform Rivera of the status of his appeal and of his future options. Defense counsel has no further obligations unless, upon review, counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). Rivera shall have 30 days from the date of this decision to proceed, if he desires, with a pro se motion for reconsideration or petition for review.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama