NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

LOUIS DANIEL QUIROZ, *Appellant*.

No. 1 CA-CR 17-0009
FILED 1-18-2018

Appeal from the Superior Court in Maricopa County
No. CR2015-002574-002
The Honorable John Christian Rea, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Matthew O. Brown, Chandler
*Counsel for Appellant*

Louis Daniel Quiroz, Florence
*Appellant*

## MEMORANDUM DECISION

Chief Judge Samuel A. Thumma delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Peter B. Swann joined.

**T H U M M A**, Chief Judge:

**¶1** This is an appeal under *Anders v. California*, 386 U.S. 738 (1967) and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for defendant Louis Daniel Quiroz has advised the court that, after searching the entire record, he has found no arguable question of law, and asks this court to conduct an *Anders* review of the record. Quiroz was given the opportunity to file a supplemental brief pro se, and has done so. This court has reviewed the record and has found no reversible error. Accordingly, Quiroz' conviction and resulting sentence are affirmed.

## FACTS[1] AND PROCEDURAL HISTORY

**¶2** Quiroz was charged by indictment with trafficking in stolen property in the second degree, a Class 3 Felony. The State alleged that, in early April 2015, Quiroz recklessly trafficked in a stolen motorized shopping cart owned by Fry's. The State filed allegations of multiple offenses not committed on the same occasion and prior felony convictions, including historical felony convictions.

**¶3** The State extended at least one plea offer to Quiroz, which expired given the passage of time without being accepted; Quiroz also was given an advisement pursuant *State v. Donald*, 198 Ariz. 406 (App. 2000). In April 2015 and in July 2015, Quiroz participated in settlement conferences, but no plea agreement was reached.

**¶4** Quiroz filed pro se motions to change counsel, one of which was granted and new counsel was appointed. Quiroz then filed a third motion to change counsel, asking that his new counsel be replaced with another attorney, which was denied. While represented by counsel, Quiroz

---

[1] This court views the facts "in the light most favorable to sustaining the verdict, and resolve[s] all reasonable inferences against the defendant." *State v. Rienhardt*, 190 Ariz. 579, 588-89 (1997) (citation omitted).

filed a pro se suppression motion, which was denied. The court appointed counsel for a pawn shop employee who was a trial witness and the State sought and obtained an order granting immunity for that witness.

¶5        A two-day jury trial was held in November 2016. Three witnesses testified and several exhibits were received in evidence. The first witness was a pawn broker, who testified that Quiroz and a woman came into his shop to "sell, pawn a motorized shopping cart." Quiroz said he bought the cart at Costco. The pawn broker looked up the price and saw "they had been selling there for, I think, about $600, I think like $599." The cart had no markings "[o]ther than just kind of what the manufacturer puts on there." The pawn broker offered to purchase the cart for $50. The couple considered the offer and came back the next day and sold the cart to the pawn broker for $50.

¶6        The pawn shop then waited for 20 days to see if anyone reported it stolen, and when no one did, the shop posted it for sale. The pawn broker admitted he "didn't feel as if maybe that it was theirs [the couple's] to be selling," which factored into the purchase price. During direct testimony, the pawn broker admitted that, because he had a feeling that it could be stolen, the State provided him immunity for his testimony from "any kind of criminal charges." The issue of immunity also was addressed during cross-examination.

¶7        After posting the cart for sale, a Fry's grocery store representative came to the pawn shop and said it looked like a Fry's cart. The police then became involved and Fry's established that it was one of their carts. Fry's then paid the pawn broker $50 to get the cart back.

¶8        The next witness was a Fry's employee, who explained that a motorized shopping cart went missing from a nearby Fry's store in April 2015. She said a customer told the store that a Fry's electric cart was in a pawn shop a few blocks away. She and another Fry's employee went to the pawn shop and took a picture of the cart's serial number and the "EAS tag" ("a small white tag" placed on items that sounds an alarm when taken out a door) that Fry's puts on its carts. She verified the cart was the one stolen from the Fry's store.

¶9        A Phoenix Police Department detective who interviewed Quiroz also testified. After identifying Quiroz in court, the detective testified Quiroz said he found the cart behind a Little Caesars, that it worked, and that they decided to take it. Quiroz told him "[t]here was no one around so they felt that they could" take it. During the interview,

Quiroz agreed it was "an expensive item and not something that would typically be left behind by someone."

¶10 After the State rested, Quiroz unsuccessfully moved for a judgment of acquittal. Quiroz, as was his right, elected not to testify or present any affirmative evidence, other than through cross-examination. Quiroz also elected not to pursue any lesser-included jury instructions. After final instructions and argument, the jury found Quiroz guilty as charged. The State waived the aggravation phase, and the court discharged the jury.

¶11 At sentencing, after receiving a presentence report and evidence, the court found Quiroz had at least two prior felony convictions, specifying those offenses. After hearing argument from counsel, and from Quiroz directly, the court sentenced him to 11.25 years, a presumptive term for a non-dangerous but repetitive Class 3 felony offense with two prior felony convictions. The court properly credited Quiroz with 346 days of pre-sentence incarceration credit. This court has jurisdiction over Quiroz' timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes (A.R.S.) §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1) (2017). [2]

## DISCUSSION

¶12 Counsel for Quiroz advised this court that after a diligent search of the entire record, counsel found no arguable question of law. This court has reviewed and considered counsel's brief and has searched the entire record for reversible error. *See State v. Clark*, 196 Ariz. 530, 537 ¶ 30 (App. 1999). Searching the record and brief reveals no reversible error.

¶13 The record shows Quiroz was represented by counsel at all stages of the proceedings and counsel was present at all critical stages. The record provided also shows there was substantial evidence supporting his conviction and resulting sentence. From the record, all proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure, and the sentence imposed was within the statutory limits and permissible range.

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

¶14        The supplemental brief filed by Quiroz personally raises issues regarding (1) the grant of immunity to the trial witness and (2) jury selection.

¶15        Quiroz questions why an attorney was appointed to represent the pawn broker, the experience of the prosecutor in granting immunity, why immunity was not granted before the day of trial, why the witness was granted immunity, why he did not see the written grant of immunity and argues that the State was "helping and protecting" the witness, and that the witness "should be charged."

¶16        The petition for immunity filed with the superior court states, in substance, that an individual "is to be called as a witness before this Court and it is stated upon information and belief that hi[s] testimony or other information may be necessary to the public interest" and the individual "has refused to testify or is likely to refuse to testify or provide other information on the basis of hi[s] privilege against self-incrimination." As a result, pursuant to A.R.S. § 13-4064, the State "provide[d] immunity from any use against the witness, of any testimony or evidence presented by him before this Court." The resulting order signed by the superior court required the witness to testify, adding that trial testimony "shall not be used against said witness" in any criminal action but that the witness "may nevertheless be prosecuted or subjected to penalty or forfeiture for any perjury, false swearing or contempt committed." Quiroz has not shown how this immunity grant or resulting order fails to comply with Arizona law or unfairly prejudiced him at trial.

¶17        Nor has Quiroz claimed or specified how the questions he raises or the actions involved in the immunity grant deprived him of a fair trial or constitute reversible error. As noted above, the immunity grant was the subject of examination and cross-examination of this witness at trial. And Quiroz' trial counsel pressed the immunity grant during closing argument. In short, Quiroz has shown no error from the grant of immunity or appointment of counsel for the pawn broker and has shown no resulting prejudice.

¶18        Turning to jury selection, Quiroz notes several questions and answers by several potential jurors. Four jurors who served stated, during voir dire, that they or a close family member or close friend had been involved in law enforcement. But when the court followed up, none of these individuals agreed with the positions of two other individuals (who did not serve as jurors) that they would be inclined to believe a police witness more than another witness or hold police officers in "a little bit higher regards."

Similarly, although several individuals who served as jurors either had been a crime victim, or had a relative or friend who was, none indicated that they would "have difficulty being fair and impartial to both sides in this case." Nor has Quiroz indicated why one juror working "for Safeway as a systems engineer" for five years would be disqualifying.

¶19 Quiroz notes that other jurors answered affirmatively to various questions during voir dire, but he does not argue that they provided disqualifying answers to follow up questions. To the contrary, when identifying potential jurors to excuse for cause, none of the individuals mentioned by Quiroz were identified as not being able to be fair and impartial. Moreover, Quiroz' counsel was given an opportunity to ask follow up questions of potential jurors. And after excusing individuals for cause, Quiroz' counsel had no "other challenges for cause." The jury was then selected from individuals where no challenges for cause had been made. On this record, Quiroz has shown no error in jury selection.

## CONCLUSION

¶20 This court has read and considered counsel's brief and Quiroz' pro se supplemental brief, and has searched the record provided for reversible error and has found none. *Leon*, 104 Ariz. at 300; *Clark*, 196 Ariz. at 537 ¶ 30. Accordingly, Quiroz' conviction and resulting sentence are affirmed.

¶21 Upon the filing of this decision, defense counsel is directed to inform Quiroz of the status of the appeal and of his future options. Defense counsel has no further obligations unless, upon review, counsel identifies an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Quiroz shall have 30 days from the date of this decision to proceed, if he desires, with a pro se motion for reconsideration or petition for review.



AMY M. WOOD • Clerk of the Court
FILED:  AA